BRICKELL ET AL. *v.* LIGHTCAP ET AL.

[76 South. 489, Division B.]

1. EXECUTORS AND ADMINISTRATORS. *Sale of land. Existence of personalty.*
   Under Code 1906, section 2075, authorizing a sale of land in preference to perscnalty where the court is satisfied that it would be to the interest of the distributees or legatee, the chancery court has jurisdiction on petition of an executor to decree a sale of realty, part of the *corpus* of the estate, where all necessary parties are before it, whether the property is devised by will or descends by operation of law.

2. EXECUTORS AND ADMINISTRATORS. *Sale of realty. Parties interested. Annuitants. Contingent remaindermen.*
   Under Code 1906, section 2079, providing that on petition to sell lands to pay debt of a decendent all parties interested shall be cited, and section 2056, charging lands of a decedent with the payment of his debts if the personalty is insufficient and section 2075 providing for a sale of realty in preference to personalty in certain instances, where a testator devised a residue of his property in trust to pay a certain sum out of the rents and profits to his son and his wife for life, without anticipation or liability

115 Miss.—27

for their debts, and provided that on the death of the survivor the trust should terminate and the property should vest in their children and the descendants of their children, and on the death of the son without children, in testator's right heirs, and gave the trustees power to manage and sell. In such case on the petition of the executor for a sale of the realty, since the *cestui qui trust* were represented by the trustee neither they nor the contingent remainderman were owners or "parties interested," entitled to summons under the statute.

3. WILLS *Construction.*
   In constructing a will the court should look to the general scope and purpose and the entire language employed.

4. TRUSTS. *Testamentary trustee. Sale of land. Fraud. Presumption.*
   The fact that a trustee, acting with the executor and another trustee in petitioning for a sale of realty to pay debts, had a probated account against the estate, was not sufficient to show fraud, since his good faith will be presumed.

APPEAL from the chancery court of Yazoo county. HON. O. B. TAYLOR, Chancellor.

Bill by H. H. Brickell and others against H. B. Lightcap and others. From a decree dismissing the original and amended bill, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Holmes & Holmes, W. A. Henry, E. L. Brown, Mayes & Mayes* and *J. B. Harris,* for appellants.

1. This is a direct attack upon the decree, and not a collateral one, as will be contended by the counsel for appellees, in the extremity of their situation; and the bill answers every purpose, and contains the necessary averments, of a bill of review. *McKinney* v. *Adams,* 95 Miss. 832, 50 So. 474; Words and Phrases, pp. 1249, 1250; Barton's Suit in Equity, p. 154.

2. If there be no persons *in esse* who are the ultimate limitees of this property, as contended for by counsel for appellees and held by the chancellor, then John F. Powell must have been served with process in order to

cut off his unborn children, contingent limitees, and the collateral kin of the testator must have been so served in order to cut off their unborn progeny, contingent limitees, under the doctrine of virtual representation. Note, 97 Am. St. Rep. 762; note, 8 L. R. A. (N. S.) 49; *Hale* v. *Hale,* 146 Ill. 227, 33 N. E. 858, 20 L. R. A. 247.

3.    If John F. Powell, or the collateral kin of the testator living at his death, be contingent remaindermen, or if John F. Powell, or such kin, be reversioner, or reversioners, of the estate, then he or they must have been served with process.    Story's Equity Pleading, section 149; *Cannon* v. *Barry,* 59 Miss. 289; *Prewett* v. *Land,* 36 Miss. 495; *Culley* v. *Elford,* 187 Ala. 165, 65 So. 381; *Farr* v. *Gilreath,* 23 S. C. 502.

4.    John F. and Virginia Powell, as the mere annuitants, being legatees with a charge upon the property, must have been served with process, and this whether, technically speaking, they had an estate in the lands or not.    *Cady* v. *Cady,* 67 Miss. 431, 7 So. 216; *Knotts* v. *Bailey,* 54 Miss. 235, 28 Am. Rep. 348; *Peebles* v. *Acker,* 70 Miss. 359, 12 So. 248; *Heatherington* v. *Lewenberg,* 61 Miss. 372; *Turner* v. *Turner,* 57 Miss. 775; *Perkins* v. *Bank,* 81 Miss. 358, 33 So. 18.

5.    As mere legatees with an interest in the income, John F. and Virginia Powell, in equity, have an interest in the land, or a property right in the use devised to them, and must have been served with process.    *Prewett* v. *Land,* 36 Miss. 495; *Leigh* v. *Harrison,* 69 Miss. 923, 11 So. 604, 18 L. R. A. 49; *Williams* v. *Owen,* 116 Ind. 71, 18 N. E. 389; *Myers* v. *Cullum,* 152 Ind. 700, 51 N. E. 918; *Grueber* v. *Lindenmeier,* 42 Minn. 99, 43 N. W. 964; *Wellington* v. *Janvrin,* 60 N. H. 174; *Currier* v. *Janvrin,* 58 N. H. 374; *Stancel* v. *Calvert,* 60 N. C. 104.

6.    The trustees took exactly that quantity of interest necessary to the execution of the trust; and the language used will not be restrained or limited so as to

invest them with that exact quantity. *Arnold* v. *Railway Co.,* 58 Tex. Civ. App. 186, 123 S. W. 1162; *Allen* v. *Hughes,* 106 Ga. 775, 32 S. E. 927; *Luquire* v. *Lee,* 121 Ga. 624, 49 S. E. 834; *Johnson* v. *Cook,* 34 Ala. 150; *Nelson* v. *Davis,* 35 Ind. 474; *Brillhart* v. *Mish,* 99 Md. 447, 58 Atl. 28; *Young* v. *Bradley,* 101 U. S. 782, 25 L. Ed. 1044; *Ward* v. *Bradbury,* 18 Beav. 190; *Temple* v. *Ferguson,* 110 Tenn. 84, 72 S. W. 455, 100 Am. St. Rep. 791; *Clark* v. *Foster,* 110 Miss. 543, 70 So. 583; *Hawker* v. *Hawker,* 3 Barn. & Ald. 537; *Dean* v. *Munnally,* 36 Miss. 358; *Andrews* v. *Brumfield,* 32 Miss. 115; *Murdoch* v. *Murdoch,* 97 Miss. 693, 53 So. 684; *Whitfield* v. *Thompson,* 85 Miss. 760, 38 So. 113; *Cady* v. *Lincoln,* 100 Miss. 765, 57 So. 213; *Rives* v. *Burrage,* 110 Miss. 789, 70 So. 893; *Cohea* v. *Jamison,* 68 Miss. 510, 10 So. 46; *Mallory* v. *Clark,* 9 Abb. Prac. (N. Y.) 358; *Williams* v. *Tozer,* 185 Pa. 302, 39 Atl. 947, 64 Am. St. Rep. 650; *Woodrop* v. *Weed,* 154 Pa. 307, 26 Atl. 375, 35 Am. St. Rep. 832; *Rembert* v. *Key,* 58 Miss. 536; *Farr* v. *Gilreath,* 23 S. C. 502; *Cannon* v. *Barry,* 59 Miss. 289; *Prewett* v. *Land,* 36 Miss. 495; Culley 1. Elford, 187 Ala. 165, 65 So. 381; Story, Eq. Pl. section 149; *Hale* v. *Hale,* 146 Ill. 227, 33 N. E. 858, 20 L. R. A. 247; *Smith* v. *Gaines,* 39 N. J. Eq. 545; *Ex parte Lyman,* 11 R. I. 157; *Kolb* v. *Booth,* 80 S. C. 501, 61 S. E. 942; *Sollee* v. *Croft,* 7 Rich. Eq. (S. C.) 34; *East Rome* v. *Cothran,* 81 Ga. 359, 8 S. E. 737.

7. It is a general rule of testamentary construction, universally recognized in this country and in England, that, "in the absence of clear and unambiguous language indicating a contrary intent to be derived from the will," considered in the light of all of its provisions, the class of persons described as testator's "heirs," "right heirs," "heirs at law," "relations," or by equivalent phraseology, is to be ascertained as of the time of the death of the testator, and not at some subsequent period; and this rule is based upon the true legal and

ordinary meaning of the terms employed, and it finds application alike in the cases of vested and contingent and executory interests, and its application is not precluded by the fact that the tenant of an antecedent particular estate is among those, or is the only one, answering the descriptive phraseology at the death of the testator. *Harris* v. *McLaran*, 30 Miss. 533; *Alexander* v. *Richardson*, 106 Miss. 517, 64 So. 217; *Branton* v. *Buckley*, 99 Misc. 116, 54 So. 850, L. R. A. 1917C, 527; *Dunlap* v. *Fant*, 74 Miss. 197, 20 So. 874; *McDaniel* v. *Allen*, 64 Miss. 417, 1 So. 356; *Bullock* v. *Downs*, 9 H. L. Cas. 1; *Lee* v. *Lee*, 1 Drew & S. 85; *Mitchell* v. *Bridges* 13 Week. Rep. 2,000; *Kellett* v. *Shephard*, 139 Ill. 442, 28 N. E. 751, 34 N. E. 254; *Tuttle* v. *Woolworth*, 62 N. J. Eq. 532, 50 Atl. 445; *Kenyon's Appeal*, 17 R. I. 149, 20 Atl. 294; *Pilkington* v. *Spratt*, 5 Barn. & Ad. 731; *Stewart's Appeal*, 147 Pa. 383, 23 Atl. 599; *Stokes* v. *Van Wyck*, 83 Va. 724, 3 S. E. 387; *Boydel* v. *Golightly*, 14 Sim. 327; *Rawlinson* v. *Wass*, 9 Hare, 673; *Gorbel* v. *Davison* 18 Beav. 556; *Thompson* v. *Smith*, 27 Can. S. C. 254; *Wright* v. *Gooden*, 6 Houst. (Del.) 397; *Smith* v. *Winsor*, 239 Ill. 567, 88 N. E. 482; *Bunting* v. *Speek*, 41 Kan. 424, 21 Pac. 288, 3 L. R. A. 690; *Weil* v. *King*, 104 S. W. 380, 31 Ky. Law Rep. 1010; *Brown* v. *Lawrence*, 3 Cush. (Mass.) 390; *Abbott* v. *Bradstreet*, 3 Allen (Mass.) 587; *Dove* v. *Torr*, 128 Mass. 38; *Keniston* v. *Mayhew*, 169 Mass. 166, 47 N. E. 612; *Holloway* v. *Holloway*, 5 Ves. Jr. 399, contingent; *Pope* v. *Whitcombe*, 3 Meriv. 689; *Losburg* v. *Newport*, 9 Beav. 376; *Urquhart* v. *Urquhart*, 13 Sim. 613; *Wrightson* v. *McCauley*, 14 Mees. & W. 214; *Nicholson* v. *Wilson*, 14 Sim. 549; *Ware* v. *Rowland*, 2 Phill. Ch. 635; *Baker* v. *Gibson*, 12 Beav. 101; *Bird* v. *Luckie*, 8 Hare, 301; *Re Barber*, 1 Smale & G. 118; *Markham* v. *Ivatt*, 20 Beav. 579; *Starr* v. *Newberry*, 23 Beav. 436; *In re Land*, 9 Week, Rep. 589; *Mortimore* v. *Mortimore*, 26 Week. Rep. 134; *Gast* v. *McNutt*, 40 N. S. 41; *Harrison* v. *Jones*, 82

Ga. 599, 9 S: E. 527; *Minot* v. *Tappan,* 122 Mass, 535;
*Whall* v. *Converse,* 146 Mass. 345, 15 N. E. 660; *Rotch*
v. *Rotch,* 173 Mass. 125, 53 N. E. 268; *Crisp* v. *Crisp,*
61 Md. 149; *Boston, etc., Co.* v. *Parker,* 197 Mass. 70,
83 N. E. 307; *Allison* v. *Allison,* 101 Va. 573, 44 S. E.
904, 63 L. R. A. 920; *Wadsworth* v. *Murray,* 161 N. Y.
274, 55 N. E. 910, 76 Am. St. Rep. 265; *Riehle Appeal,*
54 Pa. 97; *Wilinson* v. *Garrett,* 2 Colly, Ch. Cas. 643;
*Siefferth* v. *Bodham,* 9 Beav. 370; *Murphy* v. *Donegan,*
3 Jones & L. 354; *Halloway* v. *Radcliffe,* 23 Beav. 163;
*Southgate* v. *Clinch,* 27 L. J. Ch. 651; *Harrison* v. *Har-*
*rison,* 28 Beav. 21; *Fletcher* v. *Fletcher,* 3 De Gex, F. &
J. 775; *Clifton* v. *Holton,* 27 Ga. 321.

*Barnett & Perrin, Barbour & Henry,* and *Green &*
*Green,* for appellees.

1.    Trustees only proper or necessary parties.—The
trustees took a title in fee to Rialto and Springwood
plantations by this will.    Where lands are devised, the
devisees only and not the heirs, are necessary parties
to a proceeding.    *Williams* v. *Williams,* 49 Ala. 439;
*Penn. Life Ins. Co.* v. *Bauerle,* 143 Ill. 459, 33 N. E. 166;
*Temple* v. *Scott,* 143 Ill. 290, 32 N. E. 366; *Hale* v. *Hale,*
146 Ill. 227, 33 N. E. 858, 20 L. R. A. 247; *Baylor* v.
*Dejarnette,* 13 Grat. (Va.) 165-171; *Young* v. *Young,* 89
Va. 675, 17 S. E. 470, 23 L. R. A. 642; *Markle's Estate,*
17 Pa. Co. Ct. R. 337; *Putman* v. *Gleason,* 99 Mass. 454;
*Fitzgibbon* v. *Barry,* 78 Va. 762; *Mitford's Pleadings,*
265, 266; *Rhodes* v. *Caswell,* 41 App. Div. 229, 58 N. Y.
Supp. 470; *New Jersey Franklinite Co.* v. *Ames,* 12 N.
J. Eq. 507, 509; *Willink* v. *Morris Coal Co.,* 4 N. J. Eq.
377; *Van Vechten* v. *Terry,* 2 Johns. Ch. (N. Y.) 197;
*Alabama, etc., Ry. Co.* v. *Thomas,* 86 Miss. 27, 38 So.
770; *Wall* v. *Bois Gerard,* 11 Smedes & M. 588; 16 Cyc.
191; *Ridley* v. *Halliday,* 106 Tenn. 614, 61 S. W. 1025, 53
L. R. A. 477, 82 Am. St. Rep. 902; *Burwell* v. *Cawood,* 2

How. 560, 11 L. Ed. 384; *Richter* v. *Jerome,* 123 U. S. 233, 8 Sup. Ct. 106, 31 L. Ed. 132; 12 Enc. Pl. & Pr. 1041; *Alabama* v. *Burr,* 115 U. S. 426, 6 Sup. Ct. 81, 29 L. Ed. 435; *Ferris* v. *Van Ingen,* 110 Ga. 108, 35 S. E. 350; *Steiner* v. *Steiner,* 120 Ala. 144, 26 So. 498; *Roberts* v. *Hale,* 124 Iowa, 300, 99 N. W. 1076, 1 Ann. Cas. 940; *Hagan* v. *Barksdale,* 44 Miss. 186; *Hardee* v. *Cheatham,* 52 Miss. 38; section 2079, Miss. Code 1906; *Paine* v. *Pendleton,* 32 Miss. 320; 1 Freeman on Judgments (4 Ed.), section 172.

2. Words "My Right Heirs" Remaindermen.—In construing wills, there are well-established exceptions to the rule that the word "heirs" is to be taken to mean those who would take as heirs as of the time of the testator's death. *Welch* v. *Blanchard,* 208 Mass. 523, 94 N. E. 811, 33 L. R. A. (N. S.) 1 and notes; *Wood* v. *Bullard,* 151 Mass. 324, 25 N. E. 67, 7 L. R. A. 304; section 2776, Miss. Code 1906; section 2775, Miss. Code 1906; *Middlesex Banking Co.* v. *Field,* 84 Miss. 646, 37 So. 139; section 2779, Miss. Code 1906.

3. The Testator's Intent Controls.—In the absence of statute, the rule is: "It is not a rule of substantive law, but a rule of interpretation, which has been adopted by the courts as one means of ascertaining the intention of the testator as expressed in his will, and it never should be used to defeat what, from the whole will, appears with reasonable certainty to have been his intention." Note 33 L. R. A. (N. S.) p. 5; *Wood* v. *Bullard,* 151 Mass. 324, 25 N. E. 67, 7 L. R. A. 304; *Bailey* v. *Bailey,* 25 Mich. 185; *Welch* v. *Blanchard,* 208 Mass. 523, 94 N. E. 811, 33 L. R. A. (N. S.) 1; *Smith* v. *Winsor,* 239 Ill. 567, 575, 88 N. E. 482; *Johnson* v. *Askey,* 190 Ill. 58, 60 N. E. 76; *Hardy.* v. *Gage,* 66 N. H. 552, 22 Atl. 557; *Welch* v. *Brimmer,* 169 Mass. 204, 47 N. E. 699; *Heard* v. *Read,* 169 Mass. 216, 47 N. E. 778; *Tuttle* v. *Woolworth,* 62 N. J. Eq. 532, 50 Atl. 445; *Middlesex Banking Co.* v. *Field,* 84 Miss. 646, 37 So. 139; *Dunlap* v.

*Fant,* 74 Miss. 197, 20 So. 874; *Minter* v. *Wraith,* 63 Simon, Excheq. 62, p. 12; *In re Southworth,* 52 Misc. Rep. 86, 102 N. Y. Supp. 447; *Sims* v. *Comger,* 39 Miss. 232, 77 Am. Dec. 671; *Clampton* v. *Bulmer,* 5 Myl. & C. 108; 2 Beach on Trusts and Trustees, section 472.

4. The Trustees Took a Fee.—They are trustees of an active trust, and also to support contingent remainders. Trustees, in the absence of apt words defining their estate take whatever estate is necessary to execute the trust, even though a life estate or less be expressed, 28 Am. & Eng. Enc. L. (2 Ed.), 923; *Coulter* v. *Robertson,* 24 Miss. 279, 388, 57 Am. Dec. 168. Trustees take a fee where there is a duty to collect rents, profits, or income, and to pay same over to persons entitled, especially where it is to be free from the debts of the beneficiary, or where trustees are vested with discretion as to time, manner and amount of payments (28 Am. & Eng. Enc. L. (2 Ed.), 926, *De Haven* v. *Sherman,* 131 Ill. 115, 22 N. E. 711, 6 L. R. A. 745, and especially in spendthrift trusts (28 Am. & Eng. Enc. L. [2 Ed.], 927; 26 Am. & Eng. Enc. L. [2 Ed.], 143). If the trustee is permitted, as here, to sell and reinvest and convert realty into personalty, or to lease the trust property, he takes a legal title in fee. 28 Am. & Eng. Enc. L. (2 Ed.), 927; *Olcott* v. *Tope,* 115 Ill. App. 121, 129, 130; 28 Am. & Eng. Enc. L. (2 Ed.), 929, note, 930; 2 Jarman on Wills, 305, 306, and cases; *Mitchell* v. *Choctaw Bank,* 107 Miss. 314, 65 So. 278; *Jourolmon* v. *Massengill,* 86 Tenn. 82, 5 S. W. 719; *Hale* v. *Hale,* 146 Ill. 227, 33 N. E. 858, 20 L. R. A. 247; *Bofil* v. *Fisher,* 3 Rich. Eq. (S. C.) 1, 55 Am. Dec. 627; *Temple* v. *Scott,* 143 Ill. 290, 32 N. E. 366; *News* v. *Bass,* 92 Va. 383, 23 S. E. 747; *Parker* v. *Carpenter,* 77 N. H. 453, 92 Atl. 955; *Bennett* v. *Bennett,* 217 Ill. 434, 75 N. E. 339, 4 L. R. A. (N. S.) 470; *Minnich's Estate,* 206 Pa. 405, 55 Atl. 1067; 2 Minor's Institutes, 395; 2 Washb. Real Prop. (3 Ed.), 535, 534; Fearne on Rem. 225, 229, 230.

5.  Interest of John F. Powell and Wife.—Neither John F. Powell nor his wife have any estate in any of the property, real or personal, devised, and bequeathed to the trustees.  The legal title to the whole property, real and personal, was devised to these trustees.  *Mitchell* v. *Choctaw Bank,* 107 Miss. 314, 65 So. 278; *Garland* v. *Garland,* 87 Va. 758, 13 S. E. 478, 13 L. R. A. 212, 24 Am. St. Rep. 682; 26 Am. & Eng. Enc. L. (2 Ed.), 143 *et seq.; Leigh* v. *Harrison,* 69 Miss. 923, 11 So. 604, 18 L. R. A. 49; *Jourolmon* v. *Massengill,* 86 Tenn. 82, 5. S. W. 719; *Hale* v. *Hale,* 146 Ill. 227, 33 N. E. 858, 20 L. R. A. 247; *Temple* v. *Scott,* 143 Ill. 290, 32 N. E. 366; *Parker* v. *Carpenter,* 77 N. H. 453, 92 Atl. 955; *Bennett* v. *Bennett,* 217 Ill. 434, 443, 75 N. E. 339, 4 L. R. A. (N. S.) 470; *Minnich's Estate,* 206 Pa. 405, 55 Atl. 1067.

6.  Annuity Not Interest in Land.—An annuity in its strict sense is a yearly payment of a certain sum of money, granted to another in fee, or for life, or for years, and chargeable only in the person of the grantor.  2 Cyc. 459, note (*City of De Haven* v. *Sherman,* 131 Ill. 115, 22 N. E. 711, 6 L. R. A. 745; *Wagstaff* v. *Lowerre,* 23 Barb. [N. Y.] 209; *Horton* v. *Cook,* 10 Watts [Pa.] 124, 36 Am. Dec. 151) ; Id., note (*Robinson* v. *Townshend,* 3 Gill & J. [Md.] 413) ; 2 Cyc. 460; *Bowen* v. *Payton,* 14 R. I. 257; *Myers* v. *Cullum,* 152 Ind. 700, 51 N. E. 918; *Henry* v. *Henderson,* 103 Miss. 73, 60 So. 33; Perry on Trusts (6 Ed.), 386 (A), notes.

7.  John F. Powell Not "Right Heir" Under the Will. —*Middlesex Banking Co.* v. *Field,* 84 Miss. 663, 37 So. 139; *Bailey* v. *Bailey,* 25 Mich. 185; *Smith* v. *Winsor,* 239 Ill. 567, 575, 88 N. E. 482; *Johnson* v. *Askey,* 190 Ill. 58, 60 N. E. 76; *Hardy* v. *Gage,* 66 N. H. 552, 22 Atl. 557; *Welch* v. *Brimmer,* 169 Mass. 204, 47 N. E. 699; *Heard* v. *Read,* 169 Mass. 216, 47 N. E. 778; Note to 33 L. R. A. (N. S.) page 9.

8.  *Status* of Contingent Remaindermen.—Representation.—The contingent remaindermen, children, descend-

ants, or, in the event there are none surviving at· the death of John F. and Virginia, then the "right heirs" of the testator, cannot be ascertained until the death of such survivor.  The contingent-remaindermen take no interest, but a mere possibility, not even a possibility coupled with an interest.  *Baylor* v. *Dejarnette,* 13 Grat. (Va.) 165; Williams, Real Property, 232, 233; 2 Cruise's Dig. 333; *Young* v. *Young,* 89 Va. 675, 17 S. E. 470, 23 L. R. A. 642; *Markles Estate,* 17 Pa. Co. Ct. R. 337; *Putnam* v. *Gleason,* 99 Mass. 454; *News* v. *Bass,* 92 Va. 383, 23 S. E. 747; *Fitzgibbon* v. *Barry,* 78 Va. 755, 762; Parties, Mitford Pl. p. 24; *Burwell* v. *Cawood,* 2 How. 575, 11 L. Ed. 384; Mitford, Pl. 265, 266; *Bailey* v. *Hoppin,* 12 R. I. 560; *Hale* v. *Hale,* 146 Ill. 260, 33 N. E. 858, 20 L. R. A. 247; *Jourolmon* v. *Massengill,* 86 Tenn. 81, 5 S. W. 719; *Temple* v. *Scott,* 143 Ill. 290, 32 N. E. 366; *Mitchell* v. *Choctaw Bank,* 107 Miss. 314, 65 So. 278; *Rembert* v. *Key,* 58 Miss. 534; *McCarroll* v. *Alexander,* 48 Miss. 136.

STEVENS, J., delivered the opinion of the court.

Appellants exhibited their bill in equity against the appellees.  There was a demurrer to the bill, the demurrer was sustained, and from the decree sustaining the demurrer and dismissing the original and amended bill, appellants prosecute this appeal.  H. H. Brickell, J. B. Ellis, and J. J. North · are successors in office of the trustees originally appointed under the will of J. F. Powell, deceased, and the other appellants are the children and next of kin of J. F. Powell, deceased, a former citizen of Yazoo City.  The will of J. F. Powell is as follows:

"In the name of God, Amen: I, J. F. Powell, of Yazoo City, Mississippi, realizing the uncertainty of life and the certainty of death, and being of sound and disposing mind and memory, do hereby make and declare this to be my last will and testament; revoking all other wills and testaments heretofore made by me.

"Item No. 1.  I hereby will and direct that my executor, hereinafterwards named, shall, as soon as possible, collect in all monies owing to me and out of fund and any other monies coming into his hands, pay my just debts.

"Item No. 2.  I hereby will and bequeath to the persons named in this item legacies as follows: To my sister, Mrs. E. R. Anderson of Yazoo City, Miss., the sum of two thousand dollars, to my sister, Mrs. G. A. Petit the sum of two thousand five hundred dollars, to Mrs. Jennie Lockhart the sum of one thousand dollars, to W. K. Kennard the sum of ($1,000.00) one thousand dollars; to R. R. Crook the sum of one thousand dollars; to Joe Holberg the sum of one thousand dollars; to W. B. Sallis the sum of five hundred dollars; to Bre Butler the sum of one thousand dollars; to J. J. Muse the sum of five hundred dollars; to Nye Crook, the daughter of R. W. Crook, the sum of one thousand dollars; to Mrs. R. W. Crook, the wife of R. W. Crook, the sum of one thousand dollars; to Allen B. Kling the sum of one thousand dollars; to W. S. Goosey, the sum of one thousand dollars, to Mrs. Elizabeth Powell, the wife of my deceased brother John Powell, the sum of five hundred dollars ($500.00) ; and to my servant, Rachael Hendricks, the sum of seven hundred fifty dollars.

"Item No. 3.  I hereby will and bequeath and devise to my niece, Miss Mollie Powell, the daughter of my deceased brother, John Powell, that certain plantation situated in Yazoo county, Miss., and known as 'Pleasant Green.'

"Item No. 4.  All the rest and residue of my property, both real and personal, I will, bequeath and devise, in trust, to Thomas H. Campbell, Sr., trustee for the purpose hereinafterwards specified, and with the limitations and exceptions hereinafterwards mentioned, to have and hold in trust for the use of my son, John F. Powell, and his wife, Virginia Powell, for and during their natural lives, and in the event of the death of either, for the use and benefit of the survivor for and during his or her natural

life, and upon the death of the survivor the trust herein mentioned shall terminate, and the property herein devised to said trustee, shall vest in the children of John F. Powell, or the descendants of such children, and in the event of the death of said John F. Powell, without children, then upon the death of Virginia Powell, the wife of John F. Powell, the property devised in trust, as aforesaid, shall vest in my right heirs forever.

"I further direct that out of the rents, issues, profits and income of said property that said trustee, or his successor, shall pay John F. Powell, and his wife, Virginia Powell, during their natural lives, jointly, the sum of two thousand dollars per annum, said sum to be paid in monthly installments, and upon the death of either John F. Powell, or his wife said sum shall be paid to the survivor for and during his or her natural life; and the rest and residue of said rents, issue, profits, and income, after the payment of all expenses necessary for the proper improvement, management and maintenance of said property shall become a part of the corpus of my estate, and said trustee shall invest the same or any other idle monies that he may have in his control, by lending out the same and taking as security therefor first mortgage on real estate or other undoubted security, at the highest rate of interest obtainable which is consistent or with safety and security.

"I further direct that the said trustee or his successor in office may with the consent of the chancellor of the Yazoo county chancery court, sell and dispose of the property bequeathed and devised to said trustee, and in case of sale shall invest the proceeds as aforesaid, but it shall not be incumbent on the purchaser to see to the application of the proceeds.

"The real estate herein devised to said trustee is upon the following conditions and limitations and exceptions, that I hereby devise the house and lot in Yazoo City, Miss., now occupied by me as a residence, to my son, John F. Powell, directly, absolutely and in fee simple, and I further direct that the said John F. Powell, and wife Virginia

Powell may select as their home to be resided upon by them any of the plantations comprised in the real estate devised herein, and shall have the same free of all rent while so occupied by them, but the title to such plantation if so selected shall not be divested out of said trustee.

"The income herein provided for the benefit of John F. Powell and his wife Virginia Powell shall not be anticipated by them or either of them, nor shall the property devised to said trustee be in any way liable for any debts incurred by said John F. Powell and Virginia Powell or either of them.

"I further direct that, if, from ill health or other unforeseen cause, in the opinion of the said trustee, it should become expedient and proper, for the comfort and convenience of said John F. Powell and Virginia Powell, or either of them, that the income herein provided for their benefit should be increased, the said trustee shall have power to do so.

"Item No. 5. I hereby nominate and appoint R. W. Crook executor of this my last will and testament, and direct that he shall wind up my estate as speedily and economically as possible, consistent with good management. If I am engaged in the mercantile business at my death, for the purpose of collecting debts due me and to prevent a sacrifice of the goods, wares, and merchandise, my executor may continue said business for a time not exceeding one year.

"I further direct my executor to erect a suitable and proper monument over the grave of my wife, provided I have not done so prior to my death. And I further direct my executor to erect a similar monument over my grave.

"I further direct that my executor shall not pay the legacies herein bequeathed until one year after my death and in his discretion he may pay only one-half at the end of the first year and the balance within two years from my death.

"On page 1, line 23, the name of 'Mrs. S. A. Pettit' is corrected to read 'Mrs. G. A. Pettit.'" On page 2 line 4

the word 'son' is hereby corrected so as to read 'daughter.' On page 2 at line 32 the words 'and exceptions' were interlined and the word 'after' marked out. All of these corrections and interlineations being made before the signing of this will.

"Witness my hand this 6th day of Oct., 1908.

"J. F. POWELL.

"Attest: B. J. BARRIER,

"Attest: GEO. H. QUEKEMEYER.

"The above-named J. F. Powell, being of sound and disposing mind and memory, declared the above to be his will and testament and signed and published the same as such in our presence, and we at his request, signed our names hereto as subscribing witnesses, in his presence and in the presence of each other.

"This 6th day of Oct., 1908.

"B. J. BARRIER.

"GEO. H. QUEKEMEYER.

"This codicil to my foregoing will and testament made, published and declared this 19th day of August, 1909. In addition to T. H. Campbell, Sr., named in item 4 of my said will, I hereby appoint R. W. Crook, and the Bank of Yazoo City as trustees to act jointly with said T. H. Campbell, Sr., and all powers vested in said Campbell as trustee are hereby vested in said T. H. Campbell, Sr., R. W. Crook, and the Bank of Yazoo City. In the event of the death of either the said Campbell or Crook, they shall have the power to appoint by will their successor. I direct that the trustees herein named and the executor named in my will be not required to give bond as such.

"I will and bequeath and devise, in addition to the legacies heretofore given to R. W. Crook, and the said Lillian W. Crook, to the said R. W. Crook and the said Lillian W. Crook, my plantation in Yazoo county known as Gandercleugh and all the live stock on the same at the time of my death. To my niece Bessie Atkinson I will and bequeath the sum of five hundred dollars to be paid as the

other legacies mentioned in my will dated the 6th day of October, 1908.

"Witness my hand this 19th day of August, 1909.

J. F. POWELL.

"Attest:  E. S. CRANE,

"GEO. H. QUEKEMEYER.

"T. M. LIGHTCAP."

In the course of executing the will, the executor exhibited a petition to the chancery court under sections 2075 and 2079 of the Code of 1906 for the sale of certain valuable real estate to pay the debts of J. F. Powell, deceased. This petition was filed upon the theory that it was preferable and to the best interests of all parties that the real estate be sold in preference to the personalty. This petition was exhibited by the executor named in the will and the trustees, T. H. Campbell, R. W. Crook, and Bank of Yazoo City, answered the petition, and by their answer admitted that the prayer of the petition should be granted. The answer says:

"They believe it is to the best interest of the said estate that the petition should be granted and the real estate should be sold to pay the debts."

The chancellor thereupon decreed:

That R. W. Crook, the executor, is authorized and directed to sell any real estate belonging to the estate "for the purpose of paying the debts of said J. F. Powell, deceased, and he is authorized to sell only so much of said land as is required to pay the debts of said J. F. Powell, deceased; that is, to an amount not exceeding ninety-five thousand dollars, as set forth in the petition as the amount of unpaid debts now owing by the estate of J. F. Powell."

It appears that J. F. Powell was the owner of a number of plantations, a mercantile business in Yazoo City, a large amount of shares of stock in corporations, and other personalty. The executor in presenting his petition praying that the real estate be sold had citation served upon the trustees of the will, but upon no other persons.

A bond was executed for the proper application of the proceeds, and at the sale made by the executor appellee H. B. Lightcap purchased the Rialto plantation and the Springwood plantation, and fully complied with the terms of his bid by the payment of the purchase money and the sales made to him were duly confirmed by the court. Thereafter the original trustees resigned, and so also did R. W. Crook resign as executor. Appellees Brickell, Ellis, and North were then appointed trustees, and Mr. Brickell was appointed administrator with the will annexed. The substituted trustees then joined John F. and Virigina Powell and other kin of J. F. Powell, deceased, in this bill of complaint asking that the deeds of the executor attempting to convey the lands to appellee Lightcap be canceled as a cloud upon the complainants' title; that the possession be restored to the trustees in order that the trust might be continued and the estate conserved for the contingent remaindermen. The alleged vulnerable point of attack relied upon by counsel for appellants is the charge that the sale to Lithcap is void because all necessary and proper parties were not before the court. In this proceeding we are called upon to construe section 2079 of the Code. This section is as follows:

"Heirs or Devisees to be Summoned.—When a petition shall be filed to sell or lease land to pay debts or otherwise affecting the real estate of a deceased person, all parties interested shall be cited by summons or publication, which shall specify the time and place of hearing the petition; and if the petition be filed by a creditor or by a purchaser to correct a mistake in the description of the land, the executor or administrator shall be cited."

With this brief statement of the case we shall proceed to announce the conclusions we reach.

The sale to Lightcap cannot be successfully attacked in this proceeding unless the decree authorizing the sale is absolutely void. If the court had jurisdiction of the subject-matter and of the parties, then confessedly the decree is good. There is no serious contention that the

chancery court did not have jurisdiction of the subject-matter. Section 2075 expressly authorizes a sale of land in preference to personalty when the court is "satisfied that it would be to the interest of the distributees or legatees." This statute applies no matter whether the property is devised by will or descends by operation of law. It may be conceded that large powers and delicate discretion are here vested in the chancery court. But so the statute is plainly written. This contest was not initiated by a legatee or devisee to recover property especially set apart by the will for such a contestant. The sale here was of a part of the *corpus* of the estate, and there can be no question about the power of the chancery court to decree the sale if all necessary parties were before the court. This brings us to the real battle ground of this case. Did the court have jurisdiction of the parties?

The answer to this question requires a construction of section 2079 of the Code. The title of this statute declares, "Heirs or Devisees to be Summoned." In the body of the statute it is declared, "All parties interested shall be cited by summons or publication." The statute, in our judgment, here speaks of and embraces those who have a vested interest in the land itself—the heirs and devisees or the assignees of either. Although the personal estate of a decedent goes to the executor or administrator primarily charged with the debts of the decedent, yet in Mississippi, by section 2056 of our Code:

"The lands of the testator or intestate shall also stand chargeable for the debts and such expenses over and above what the personal estate may be sufficient to pay, and may be subjected thereto in the manner hereinafter directed."

By this statute the real estate stands charged with the debts in any case where there is an insufficiency of personalty or no personalty whatever. Section 2075 goes a step further, and provides, as stated, for a sale of the real estate in certain instances in preference to a sale of the personalty. Under any petition to sell,

the heirs or devisees—those who own the estate sought to be sold—must be made parties. This is the plain and simple meaning of the statute, and this is the meaning which our court has uniformly given the statute in question. In the early case of *Campbell* v. *Brown,* 6 How. 106, our court, by Mr. Justice TROTTER, said:

"One case is given by the statute in which he [administrator] may sell the real estate, and that is when the personal property is insufficient to discharge the debts of the deceased. Another is perhaps where it can be shown that it will·be for the interest of the heirs to convert it into money. But in any proceeding, in the one case or the other, the heirs must have notice. This is required by the statute as well as by general principles of justice."

In that case the decree of the probate court was attacked because of the lack of notice to the heirs of the proceedings there had to sell the real estate. The language of the statute which appears in Hutchinson's Code on pages 666 to 667 provides that:

Citation should issue to "all persons interested in the lands, tenements, and hereditaments of the deceased."

And at another point:

"The heir or devisee whose lands, tenements, or hereditaments, so descending or devised, shall be sold as aforesaid for the payment of the debts of the intestate or testator, may compel all others claiming or holding under such intestate or testator, to contribute in proportion to their respective interests, so as to equalize the burden or loss."

The provision last quoted has been brought forward and is now a part of section 2069 of the Code, providing that:

"The heir or devisee whose lands shall be sold may compel" contribution.

Again, in the case of *Puckett et al.* v. *McDonald et al.,* 6 How. 273, is presented an attack similar to the present controversy, and the court held that:

They "had no jurisdiction of the persons· interested in the subject of the decree, because no notice, either actual or constructive, was ever given them."

Mr. Howard, the official reporter, wrote to this case the following syllabus:

"A sale of the lands belonging to the estate of a person deceased, under an order of the probate court, which does not show notice to the *heirs* of the estate, is void."

We have here for emphasis underscored the word "heirs." In the latter case of *Laughman* v. *Thompson,* 6 Smedes & M. 259, the court, on page 269, again used the words "heirs at law," saying:

"It must appear from the records of the probate court, in cases of the sale of lands by an administrator under its order, that legal notice has been given to the heirs at law."

The case of *Martin* v. *Williams,* 42 Miss. 210, 97 Am. Dec. 456, shows another attack made upon a decree ordering the sale of lands. In this case there was a will, and the court, by SHACKELFORD, C. J., said:

"The only citation in this case is copied into the record. On the 15th of November, 1858, as we have seen, this citation was returned by the sheriff 'executed.' All the devisees in the will were embraced in this citation. It is obvious that this return of the sheriff is untrue in point of fact. It was impossible for him to have executed that process upon the residents of Lowndes and Octibbeha counties and the resident of the state of Alabama. It necessarily follows that parties in interest were not served with process, and their interests are or were not affected by the decree."

In *Paine* v. *Pendleton,* 32 Miss. 320, there was a petition to sell lands because of an insufficiency of personalty. Not only the heirs were made parties in that case, but the purchaser from the intestate in his lifetime and the purchaser of a part of the land from the heirs of the intestate since the latter's death were all made de-

fendants. 'There was a contention that all the defend-
ants should not have been admitted to contest the peti-
tion.  The court said:

"The object of the proceeding was to sell the lands
for the payment of debts of the intestate.  Not only the
heirs, but all other persons interested in the lands, were
required to be notified of the application and warned to
appear, and show. cause against it."

The distinguished reporter, then officially serving the
court, construed this language as meaning "all persons
interested in the lands of the decedent, and who prima
facie have title thereto, have a right to appear and
contest the application."  Again, in *Hargrove* v. *Baskin,*
50 Miss. 194, the court said:

"The heir or devisee must be made a party"—citing
*Paine* v. *Pendleton, supra,* and *Ferguson* v. *Scott,* 49
Miss. 500.

The phrases "parties interested" and "parties in in-
terest" appear several times in the chapter on "Execu-
tors and Administrators."  Section 2059 uses the phrase
"parties in interest" in requiring citation when per-
sonal property is sought to be sold for the benefit of the
estate, and not for the purpose of paying debts.  The
statutes authorizing the leasing of land for a term of
years direct that "parties interested shall be sum-
moned."  In all these statutes can it be said that the
holders of contingent interests should be made parties?
Creditors are indirectly interested.  Is not the primary
purpose of the statutes to require simply that owners of
the estate sought to be sold should be brought before
the court?  We think so.

This brings us, then, to a consideration of the will of
John F. Powell and the determination of the character
of estate taken by John and Virginia Powell, and the
other collateral kin here suing.  In construing the will
we look to the general scope and purpose and the entire
language. employed.  In the instant case there are good

reasons which led the testator to devise his estate to trustees with directions that the only son, John, and Virginia, the wife of John, should receive an annuity. By the express terms of the will itself the trustees are fully empowered to manage the entire estate with the exception of certain specific devises, and by and with the consent of the chancellor the trustees are empowered to sell and dispose of the property bequeathed and devised. It is provided that the income provided for John F. and Virginia Powell should not be anticipated by them, ''nor shall the property devised to said trustees be in any way liable for any debts incurred by'' them or either of them. By the terms of this will John F. and Virginia Powell took no estate in the property itself, but are interested solely in the monthly installments which the trustees are to pay to them ''out of the rents, issues, profits, and income.'' It will be noted that the full beneficial use of the property is not given to John F. and Virginia Powell. As to the bulk of the estate they are not given even the right of possession. They have neither possession nor title and have no voice in the management of the estate. It follows that the doctrine of virtual representation applies. The trustees are charged with an active trust. They are to make all contracts, collect all rents and profits, make all investments, prosecute and defend all suits in reference to the estate. The will does devise the home place in Yazoo City to John F. Powell ''absolutely and in fee simple.'' The testator employed this language advisedly. It negatives any idea that John F. Powell took any estate whatever in any other portion of the real estate. The active trust continues for the life of John F. and Virginia Powell or the survivor of them, but ''upon the death of the survivor the trust herein mentioned shall terminate, and the property herein devised to said trustee shall vest in the children, and in the event of the death of said John F. Powell without children, then upon the

death of Virginia Powell, the wife of John F. Powell, the property devised in trust, as aforesaid, shall vest in my right heirs forever." At this time John F. Powell still lives, and is without children, and it cannot be known whether he will die without children or descendants of children. There are then no persons *in esse* with the vested interest in the remainder. The event which will terminate the trust has not yet occurred, and it cannot possibly now be known who will receive the remainder. If, then, the collateral kin, who are here suing, have any interest whatever, the interest is contingent, and not vested. They may never have any interest in this estate. They had no vested interest at the time the plantations were sold to Mr. Lightcap. But it is very earnestly argued that John F. and Virginia Powell should have been made parties. As before stated, John F. and Virginia Powell were represented by their trustees. It is stated in Mitford's Pleadings, 265, 266:

"Trustees of real estate for the payment of debts or legacies may sustain a suit either as plaintiffs or defendants, without bringing before the court the creditors or legatees for whom they are trustees, which, in many cases, would be impossible, and the rights of the creditors or legatees will be bound by the decision of the court against trustees."

Under the language of the will here under review it cannot be doubted that the trustees are fully empowered to prosecute necessary suits for the recovery of debts due the estate and to protect their title and possession. They have the equal right to defend litigation. The cases are frequent where trustees in a bond mortgage are held to represent fully the interest of the bondholders and where the trustees are held to be the only necessary parties. A case of this kind appears in our court. *A. & V. R. R. Co.* v. *Thomas,* 86 Miss. 27, 38 So. 770. In the early case of *Wall* v. *Boisgerard,* 11 Smedes &

M. 588, there was a suit against the directors, and the court held that all the partners could probably never be reached, and that the directors "were the agents for all of the partners, and it is sufficient that they are parties." But the will in this case goes further in granting power to the trustees. They not only have the right to prosecute and defend litigation, but with the consent of the chancellor they are empowered to sell real estate. This in effect is what the trustees in this case have done. At the time the petition to sell the realty was presented to the court the estate owned valuable stocks as well as valuable plantations. The executor appears to have been one of the trustees, and conceived the idea that it was best for all beneficiaries of this estate that the valuable stocks should be preserved and the real estate sold. All of the trustees were of the same opinion. When, therefore, the executor presented his petition asking that the land be sold, the trustees did more than merely answer the petition. They came in and asked the court to grant the prayer thereof. The decree of the court shows upon its face that the trustees joined in the request. The chancellor in hearing the matter approved the plan agreed upon by the executor and trustees. The chancellor then gave his consent to a sale of the real estate. The effect of this was an exercise of the power conferred by the will authorizing the trustees to sell any portion of the estate by and with the consent of the chancellor. In conferring this power the testator expressly provides that "it shall not be incumbent on the purchaser to see to the application of the proceeds." It was then not incumbent upon Mr. Lightcap in this case to see that the purchase money was properly applied. The executor was under a bond for the money and the faithful application thereof. By a sale of the realty in preference to personalty no part of the estate was destroyed. Both realty and personalty were devised in trust, and the accumulations of the estate are under the terms of the will to be vested and reinvested, and

the whole estate conserved in the best way possible. By a sale of the realty the valuable personalty was preserved to the estate, and this personalty must be presumed to have been of equal value of the real estate sold to Mr. Lightcap. Surely in exercising the power conferred upon the trustees to sell any portion of the estate by and with the consent of the chancellor, John F. and Virginia Powell would not have to be consulted. Whatever the reasons which impelled the testator may have been, it is manifest that the personal judgment, advice, or discretion of John F. and Virginia Powell count for nothing in the administration of this estate. They, then, were not necessary parties to the proceeding for a sale of the lands. There is a distinction universally recognized between necessary and proper parties. We need not go to the extent of holding that the chancery court would not entertain a petition by John F. and Virginia Powell looking towards a preservation of the estate in accordance with the general purposes of the will or to say that the chancellor would turn a deaf ear to any suggestions made by them. We are here dealing with the question as to who are necessary parties, and surely by this criterion the decree of sale must be upheld.

The plan and purpose of this will is to provide merely an annuity for John F. and Virginia Powell, and at the death of the survivor of them to cast the entire estate upon their children or the descendants of their children, if any there be, and, if there are no children or descendants of children, then to the "right heirs" of John F. Powell, deceased. The contingency here provided for has not arrived, and it will profit the court little here to speculate upon who will take the estate when the "survivor" departs this earth. It appears that John and his wife are yet childless. Probably, then, the estate will devolve upon those embraced in the description "my right heirs." Of course, the intention of the testator must control. The contingency which will devolve

the title upon "my right heirs" has not yet happened, and before this contingency does happen, no one has a right to claim the estate by virtue of this designation "my right heirs." The interests of whomsoever may claim under this phrase are contingent, and not vested. In this proceeding we are not called upon to indicate who will ultimately take the estate under the designation mentioned. It is sufficient to say that John F. Powell, the son, took no vested estate. The purpose of the testator to dispose of his entire estate is perfectly manifest. We should not, by any amount of refined construction, produce in this case a partial intestacy. It appears that the testator was a man of large business experience and possessed a valuable estate, and it was his intention to make disposition of the whole. During the life of John the title is cast upon the trustees. While John lives he has no title. When he is dead he will need none. Here we might say it is unnecessary for us to characterize the exact estate or title taken by the trustees; that is to say, whether they have taken a fee simple or a life estate with a power of sale. The title which they do take will certainly terminate upon the death of the "survivor," whether that be John or his wife, Virginia, and then it is the estate vests fully and completely. Any other construction would lead to the holding that there vested in John an estate which upon his death without issue surviving him would descend to his wife, Virginia. Such manifestly was never the intention of the good father who here so bounteously attempted to take care of his son and daughter-in-law, and yet to accomplish this without devolving upon them any title, legal or equitable. Any other construction would defeat the purpose of the testator and destroy the very will itself. The character of the estate taken by John F. and Virginia Powell in the present case is strikingly similar to the beneficial interest taken by the sons of the testatrix in *Thomas* v. *Thomas,* 97 Miss. 697, 53 So. 630. If, instead of a devise in trust, the es-

tate had been devised to John F. and Virginia Powell for life with remainder to their children, or in default of children the "right heirs" of the testator, then John and Virginia would have been parties in being having a vested estate, would then have been necessary parties, and on being summoned would have represented the contingent remaindermen in the litigation here brought under review. *Ridley* v. *Halliday,* 106 Tenn. 614, 61 S. W. 1027, 53 L. R. A. 477, 82 Am. St. Rep. 902, holds:

"It has been held by a large majority of the courts, both English and American, that in certain cases the life tenant will represent contingent remaindermen where no one of the latter is *in esse* at the time the court is called upon to intervene with regard to the estate in controversy."

There are many cases holding that in partition suits and other proceedings in court affecting the title or possession of real estate, the life tenant is the only necessary party where the interests in remainder are contingent, and no person is known to be in existence having a fixed and vested interest. Cases on this point both in England and America could be multiplied.

The bill does not show a case of fraud, conspiracy, or collusion. The court had jurisdiction of the subject-matter, and we must indulge the presumption that there were lawfully probated debts to be paid, and that the interests of parties and creditors were properly safeguarded by the chancellor. The intimation that one of the trustees was disqualified to act because it had a probated account is not sufficient to show fraud or any overreaching. In this state it is lawful for the executor or administrator to probate his individual account, and here there were three joint trustees. Courts should presume in favor of good faith until the contrary is shown. Here the bill does not set up facts from which fraud or collusion may be inferred, and, indeed, the oral argument of learned counsel was not based on this ground.

The proceedings here attacked have been approved by three learned chancellors of the district. Chancellor Lyell ordered the sale; Chancellor Jones rendered the decree of confirmation; and Chancellor Taylor has dismissed the bill in the present attack. The purchaser, Mr. Lightcap, paid his bid, and has entered into possession upon the faith of the decrees rendered, and presumptively the consideration paid by him has been disbursed by the court for lawful purposes. Equity, then, as well as the law, is in his favor.

*Affirmed.*

ETHRIDGE, J. (dissenting).

In my opinion, the demurrer to the declaration should have been overruled, and the appellees required to answer. In order to make my views clear, it will be necessary to state more at length the allegations of the bill than they have been stated in the majority opinion; for not only is the will to be construed and sections 2075 and 2079 of the Code to be construed as applied to the will in this case, but there are allegations in the pleading that, in my opinion, make it legally impossible to treat the trustees as the virtual representatives of any of the parties in interest in the estate of the decedent. The bill alleges that J. F. Powell at the time of his death was seised and possessed of certain plantations described in the declaration, and that he owned a large landed and personal estate which came into the hands of his executor named in the last will and testament, said personal property consisting of live stock, farming implements, merchandise, stock of corporations, notes and accounts, stock and tangible personal property appraised at ninety-nine thousand two hundred and fifty-seven dollars and seventy-six cents, and that there were probated claims against the estate to the amount of one hundred and sixty-three thousand one hundred and eighty-eight dollars and forty-four cents, and legacies

to the amount of sixteen thousand two hundred and fifty
dollars, and that if the directions of the will had been
observed the assets in the hands of the executor were
sufficient to pay the debts and legacies; that on the 8th
of February, 1912, the executor exhibited a petition to
the chancery court of Yazoo county against the trustees
praying for a decree ordering a sale of realty in prefer-
ence to personalty for the purpose of paying debts, the
prayer of which petition the trustees by their answers
joined, and a decree ordering the sale was granted with-
out notice to or service of process upon the parties in-
terested in said estate other than the trustees. It is
alleged that the petition for the sale of lands did not de-
scribe particular land or pray for the sale of any par-
ticular land, and that the decree of the court granting
the prayer of the petition did not describe any particu-
lar land to be sold, but authorized the executor to sell
any of the lands of which J. F. Powell was possessed
at the date of his death, not prescribing the terms or
conditions of the sale, except to provide that only suffi-
cient land should be sold to pay the debts, leaving the
particular lands to be sold entirely to the discretion of
the executor, and that such sale was made and con-
firmed without notice to any of the complainants or any
other party than the trustees in the will. The bill also
alleged that it was unnecessary to sell the lands to pay
debts, and that the debts so called to which the proceeds
of the sale were to be applied were not lawful debts
against the estate of the deceased, but were in legal
effect personal debts of the executor due to one of the
trustees. It is also alleged that there was sufficient
moneys and notes from lands previously sold to pay the
debts without sale of the land in question in this suit.

It further appears that subsequent to the death of the
decedent that John F. Powell and Virginia Powell, his
wife, threatened to bring a suit to contest the provisions
of the will, and that the trustees and said John F. Pow-
ell and Virginia Powell, with the consent of other rela-

tives of the deceased, entered into an agreement by which John F. and Virginia Powell undertook to surrender their right granted under the will to live upon any one of the plantations free of rent charge in consideration of an agreement on the part of the trustees to increase the annual allowance made under the provisions of the will from two thousand dollars per annum to five thousand dollars per annum, and in addition to surrender to John F. Powell certain stock in corporations set out in detail in the agreement. It further appears in this agreement that the trustees undertook to pay out of the funds in their hands seven hundred dollars attorney's fee to the attorneys of John F. and Virginia Powell in attacking the will and in bringing about a compromise. In this agreement of compromise it is recited that John F. Powell would be the "right heir" of J. F. Powell, deceased, in the event he died without children, and that upon his death without children the *corpus* of the estate would be vested in the petitioner. It is further agreed that the trustees should increase the allowance to five thousand dollars, and this increase should be effective from the date of the death of the testator. By paragraph 5 of the compromise the trustees agreed to deliver contemporaneously with the execution of that agreement to John F. and Virginia Powell all notes and accounts, evidences of indebtedness, moneys, and personal property belonging to said John F. and Virginia Powell. In paragraph 7 it was agreed that, in consideration of the compromise agreement being faithfully carried out, John F. and Virginia Powell waived all right to contest the validity in any court of the said will and codicil, and agreed that the will and codicil probated are valid and binding, "except as modified by the terms of this compromise agreement." In paragraph 10 of the compromise agreement it was provided that in the event any court of competent jurisdiction shall ever decide that the parties of the first part (the trustees) have exceeded their authority under the will

and codicil in entering into this agreement, the same shall become null and void as to the parties of the second part, and the parties of the second part shall still have, and may enforce in any court, all rights they have and not be prejudiced in any respect by the delay. In article 11 it was agreed that the annuity raised to five thousand dollars should never thereafter be decreased, but nothing therein contained should be construed to be a limitation upon the power of the trustees or their successors to further increase the sum to a greater sum than five thousand dollars, if at any time in the future it should become proper and expedient to do so under the terms of the will.

It is alleged that the sale of these lands was invalid and illegal: First, because the lands were not described in the decree of February 8, 1912, or by the petition upon which it was granted; second, that said decree was rendered without notice to or service of process upon either of the complainants, John F. and Virginia B. Powell; third, the same was rendered without notice to or service of process upon the other persons interested in said estate under said last will and testament; fourth, the decree ordered and the petition on which same was granted prayed for the sale of realty in preference to prsonalty for the purpose of paying debts contrary to the directions of said last will and testament; fifth, that there was no schedule of assets filed with the said petition; sixth, there was no schedule of probated debts owing filed with the said petition; seventh, said petition did not pray for, and said decree did not order, the sale of any specific part of the realty, but left the determination of what part should be sold entirely to the executor; eighth, that the lands were sold subject to leases thereon, and were so advertised contrary to the terms and provisions of the decree, and said leases had been made by the trustees in charge thereof; ninth, that the sale was confirmed without motion or petition therefor or report thereof or consent thereto by the parties be-

fore the court, all of the said papers being filed subsequent to the decree of confirmation.

The declaration was demurred to, the demurrer containing many grounds, among which the following may be mentioned: First, there is no equity on the face of the bill; second, that the bill did not show cause of action against the defendant; third, that the bill shows that the proceedings to sell the land to pay debts had as defendants thereto the trustees, and that the trustees consented to the sale of the lands in suit; fourth, that the bill does not show any title in complainants; fifth, that the record in the administration proceedings was a part of the record of the court, of which the court will take judicial knowledge, and show that the executor executed his bond for the faithful application of the proceeds of the land; sixth, the bill does not show that the money was not applied to the payment of lawful debts; seventh, that the decree of confirmation of sale is conclusive, and that the sales were "to the interest of the devisees and legatees and cannot be collaterally attacked;" eighth, that the averment of the bill that the indebtedness to the Bank of Yazoo City was one for which the estate was not liable is precluded by the decree ordering the sale and its confirmation. There are various other grounds, among which may be stated without numbering them: That the bill did not show the debts were not incurred by the trustees in conducting the mercantile business or in the proper improvement, management, and maintenance of the plantation, and that there were no persons *in esse* having an interest in the Rialto and Springwood plantations, except the trustees, and they were the only necessary parties defendant to the petition to sell lands in preference to personalty; also the averment that the income is insufficient to pay the annuity by reason of unnecessary and improper sales, that the remedy would be against the executor for misapplication of the funds, and not against the defendant's title to the property, and that

the decree of sale was conclusive adjudication of the liability of the property for the payment of the debts. I invite the attention of the bar to the terms of the will set out in full in the majority opinion. I desire to refer here to certain features of the will. Item No. 1 directed the executor to collect all moneys as soon as possible, and out of this fund and any other moneys coming into his hands to pay the testator's just debts. Item No. 2 bequeathed to Nye Crook, the daughter of R. W. Crook, the executor, one thousand dollars, and to the wife of the executor one thousand dollars, and other legacies. Item No. 3 bequeathed to Miss Molly Powell, niece of the decedent, Pleasant Green plantation, in Yazoo county, Miss. Item No. 4 provided that "all the rest and residue of my property, both real and personal, I will, bequeath, and devise in trust to Thomas H. Campbell, Sr., trustee, for the purposes hereinafter specified and with the limitations and exceptions hereinafter mentioned, to have and to hold in trust for the use of my son, John F. Powell, and his wife, Virginia Powell, for and during their natural lives, and in the event of the death of either, for the use and benefit of the survivor during his or her natural life," and provides that on the death of the survivor the trust shall terminate, and the property devised shall vest in the children of John F. Powell or the descendants of such children, and in the event of the death of John F. Powell without children, then upon the death of Virginia Powell, wife of John F. Powell, the property "shall vest in my right heirs forever." "I further direct that out of the rents, profits, and income of said property that the said trustee, or his successor, shall pay Jhon F. Powell and his wife, Virginia Powell, during their lives jointly the sum of two thousand dollars per annum, said sum to be paid in monthly installments and upon the death of either John F. Powell or his wife said sum shall be paid to the survivor for and during his or her natural life." The trustee is then directed to invest the residue of the

profits and income for the proper improvement, management, and maintenance of the property and any idle or surplus money to be invested by lending the same out on the best security and at the best rate of interest obtainable consistent with safety and security. Then follows this provision: "I further direct that the said trustee, or his successor in office, may, with the consent of the chancellor of Yazoo county chancery court, sell and dispose of the property bequeathed and devised to the said trustee and in case of sale shall invest the proceeds as aforesaid, but it shall not be incumbent upon the purchaser to see to the application of the proceeds." Then follows a devise to John F. Powell in fee simple of the lot and house owned and occupied by the decedent as a residence to John F. Powell absolutely in fee simple. "And I further direct that said John F. Powell and his wife, Virginia Powell, may select as their home to be resided upon by them any of the plantations comprised in the real estate devised herein and shall have the same free of all rent while so occupied by them." Then there is a provision as follows: "The income herein provided for the benefit of John F. Powell and his wife, Virginia, shall not be anticipated by them or either of them, nor shall the property devised to the said trustee be in any way liable for any debts incurred by the said John F. Powell and Virginia Powell or either of them. I further direct that if from ill health or other unforeseen cause in the opinion of the trustee it shall become expedient and proper for the comfort and convenience of said John F. Powell and Virginia Powell, or either of them, that the income herein provided for their benefit should be increased, the said trustee shall have power to do so." In the codicil of the will R. W. Crook, the executor, and the Bank of Yazoo City were also made trustees to act jointly with T. H. Campbell, Sr. Then follows the devise to R. W. Crook and Lillian W. Crook "my plantation in Yazoo county known as Gandercleugh and all the live stock on the same at the time of

my death.'' It will be seen from the foregoing that the executor and trustee, R. W. Crook, was a devisee of the will, and that he and his daughter and wife were interested in the estate, and it was to his interest personally as well as to the interest of his family to see that the plantation and devises so made were not used or sold in paying debts. It will be seen also that the other trustee, the Bank of Yazoo City, was a large creditor of the estate, or at least under the allegations of the bill of one of the trustees, the executor and cotrustee, and was interested adversely to the appellants in this cause. It is further to be seen from the above recitals that John F. and Virginia Powell not only have an annuity of two thousand dollars, but have a fee-simple interest in the house and lot constituting the homestead of the decedent and the right for life to live upon any of the plantations devised in the will free of rent charge during their life. This at least was a qualified life estate in all plantations, of any of them, owned by the decedent at the time of his death.

Under the decree ordering the sale leaving to the executor the sole power to sell any of the lands owned by the decedent at his death, the executor could, if he so willed, if the said decree of sale was valid, select the plantation of any of the legatees or the residence willed to John F. Powell or any other realty owned by the decedent. It further appears from the recitals of the will that John F. and Virginia Powell were the beneficial owners of the estate not specifically devised during their natural lives. It was to be used, managed, and conserved by the trustees for the use of John F. and Virginia Powell during their lives, and at their death was to terminate and vest absolutely in the right heirs of the decedent in the absence of children born to John F. Powell. The right heirs under the provisions of this peculiar will were such persons as at the death of J. F. Powell, the decedent, would take the estate if John F. and Virginia Powell were not in existence, or if there

was no children born to them in existence. These right heirs were parties in interest within the meaning of the statute (section 2079). John F. Powell, having a qualified life estate in the lands and a right to secure an annuity from the lands and a right to live on any one of the plantations free of rent charge, had an interest in the land within the meaning of section 2079. The trustees evidently proceeded upon the theory that the compromise agreement with John F. Powell reduced his claim to a mere annuity, and from their viewpoint he had no interest in the land, though, in my opinion, an annuity charged upon the land as is done by this will was itself an interest in the land within the meaning of said section.

I have always understood that under the laws of this state (subject to certain statutory restrictions not applicable to the facts of this case) a person could dispose of his property in any manner that he saw proper, and that when a person made a valid will and died, the will being valid at the date of his death, there was no power vested either in the heirs, devisees, or legatees, or in the chancery court, that can change the will, eliminate some of its provisions, and write new provisions instead. The proceeding in this case in the chancery court under the compromise agreement, petition for approval, and confirmation by the court of the compromise agreement is something "new under the sun." It is certainly a novel doctrine that the trustees of a will or the executor of a will can pay out attorney's fees to attorneys to attack the will and destroy it. There is no clause anywhere in the will giving such power, and clearly none was intended. It would be absurd to imagine a man making a will with the view and intention that some attorney should receive a fee for an effort to destroy the will. Yet we find in the decree confirming that so-called settlement directing and authorizing the executor and trustees to pay an attorney's fee of seven hundred dollars for an effort to break and destroy the will. It is

manifest that the power of the trustees to make a conveyance of the lands under the terms of the will had no
reference or application to a proceeding to pay debts.
On the contrary, by the very terms of the will, the debts
were to be paid from other funds than the real estate,
and the only possible authority to sell lands in preference to personalty would be derived from the statute
(section 2075 of the Code). I think the will is the law
of the case, and that it is evident from a study of the
entire will that it was the purpose of the testator to
have the debts paid out of the money, accounts, and personal effects in preference to realty. I cannot agree
with the construction limiting and restricting the language of section 2079. The words "all parties interested shall be cited by summons or publication" should
not be restricted to such as own a vested estate in the
lands under the common-law doctrine of tenures. Such
a construction is contrary to the principles of due process of law as known and understood throughout all the
history of English common law, and especially as applied and adopted in America. It has always been
recognized that a party should have a hearing before
being deprived of his rights, and it has never been the
policy of our government nor that of England, as I understand it, to have one person summoned to defend the
rights of another person unless in cases of absolute necessity, such as where a person not in being, or not
capable of appearing and defending, made a deviation
from the rule necessary. It accords with fundamental
justice to have all parties having any rights in a matter
brought into court so that they may present whatever
facts they may be able to present bearing on the judgment or discretion of the court. Under the early statutes of this state (Hutchinson's Code of 1848, p. 666)
the provision then in the law bearing on this subject
was as follows:

"And the said court shall thereupon cause a citation
to issue directing all persons interested in the lands,

tenements, and hereditaments of the deceased, to appear."

Under the terms of this statute the person must have some interest in the lands, tenements, and hereditaments, and by reference to rules of construction you would exclude such interests as were not named in the statute. When the Code of 1857 was adopted the legislature saw proper to make a change, and instead of undertaking to enumerate the classes of interest, or character of interest, which a person must possess to be notified, it adopted language that carried with it all possible interest flowing out of the ownership, use, or enjoyment of the property, and used the words "all persons interested," omitting the words "in the lands, tenements, and hereditaments." The Code of 1880, and from thence forward, the present language of the statute is "all persons interested." These words are broad enough to embrace every character of right having its root in and springing from the estate of the deceased person. It is more in harmony with just principles to give a broad construction to this language than it is to adopt a narrow or restricted construction. The wisdom of giving such construction, that is, a broad and comprehensive construction, to these words, is demonstrated in the pleadings in this case. We find in the petition to sell lands in the record that only the trustees were made parties, and they failed to file any objection whatever, and failed to suggest or contend that any claim was illegal or unjust, while under the pleadings now before the court it appears from the allegations that the debts were illegal charges for which the estate was not liable. The executor was one of the trustees, and as executor he was charged with the duty of representing the creditors, while as trustee it would be his duty under the theory of the majority opinion and of the chancellor below to represent parties hostile to the creditors' interests. Another one of the trustees had large claims against the estate as a creditor, and his personal interest was hos-

tile to the life tenant and to the remaindermen, whether vested or contingent; therefore we have two out of three of the trustees acting in capacities that are necessarily adverse and hostile to each other. It does not matter how honest their intentions may have been, whether they were fraudulent or not, the law will not tolerate a person acting in two capacities each contrary to the other. It was of the highest importance to John F. Powell and his wife and to the remaindermen, whether they be vested or contingent, and to the devisees and legatees of the will, that they be heard upon this proposition, and that they have the opportunity and the right to present to the court any legal objection they may have had to the sale of the lands sold under the order of court.

Upon the question of what is an interest in land or in an estate, I refer to Words and Phrases, First Series, vol. 4, pp. 3697 and 3692, and Words and Phrases, Second Series, pp. 1137 and 1132. Numerous other authorities on this proposition and the other proposition involved in the suit will be found in the briefs, and the reporter is requested to state the points made and the authorities relied on in the briefs. I shall not undertake to go into the authorities in this case in any extensive way, but I desire to call the attention of the bar to a note on this subject in *Downey* v. *Seib,* 8 L. R. A. (N. S.) 51 *et seq.,* under the title of ''Doctrine of Representations,'' and to a note, in *Rutledge* v. *Fishburne,* 97 Am. St. Rep. at page 763. I shall use some of the ideas contained in these notes, without citation of authorities, to express my views upon the doctrine of representation. ''If there is in existence no member of the class to which the unborn persons belong, there is no representation in litigation and a court cannot appoint a representative.'' There was in court in the present case no representative of the remainderman, either vested or contingent. If there had been some of the parties in existence before the court who would take

the remainder of the estate at the death of John F. Powell and Virginia B. Powell, in the absence of children born to them, and such persons had made a fair and honest defense, it might be urged that the unborn children of John F. Powell and the nonresident remaindermen were bound by the judgment. "It is a settled principle that where a person is seised in fee of an estate which is liable to be defeated by, or shifted through, conditional limitation or executory devise, the inheritance is not represented in a court of equity by the person whose fee is thus liable to be defeated, except as against himself and those who take under him. If some one of the real or substantial parties to a cause does not hold such a relation to the property involved and to the unborn contingent remaindermen as to make him a legal representative of the inheritance so as to bind it by recovery against them, the contingent remaindermen are not represented in the proceeding and therefore not bound by the decree." Again, "the tests of effective representation are: First, privity of the estate, using the terms in the broad sense; and, second, the absence of conflicting interests between the unborn and the living representatives. If there are ever so many contingent limitations of a trust, it is an established rule that it is sufficient to bring the trustees before the court together with him in whom the first remainder of the inheritance is vested, and all that may come after will be bound by the decree, though not *in esse*, unless there is fraud or collusion between the trustees and the first person in whom a remainder in inheritance is vested." It is not sufficient in this case to have the trustees before the court, but at least some one representing the parties who would take the inheritance at the end of the trust must be summoned to appear. I have shown, I think, that there was a conflict of interest between the trustees personally and the representatives which it is said that they represent so as to bind in this cause. To my mind it is shocking to deprive a person

of a valued right on the theory that he is represented by another person where that other person's rights and interests conflict with the interest of the person he is supposed to represent. Why, in this case, were the trustees so anxious to have John F. and Virgnia Powell drop the suit to contest the will? Their duty was to carry out the will and defend the will against assault; yet we find that to get rid of this attack, in violation of the terms of the will, they turned over to John F. and Virginia Powell not only an increase in their annuity, but a lot of personal property, and in addition to that paid attorney's fees to their attorneys to the amount of seven hundred dollars. It is clear to my mind that the testator for some reason distrusted the ability of his son to manage and control this property, but he intended to secure to his son a competence during his life and a place at least where he could have a home and a living from his estate. It is further my conviction from a study of this will that the testator, believing that no children could be born to John F. and Virginia Powell, desired to retain his property in his own family rather than have it go to the wife of John F. Powell in case she should survive him and at her death to her blood instead of his own. The proceedings that have been taken in this cause, and which have received the sanction of this court through a majority of its members, has practically destroyed this will. It may not be a wise thing to permit a man to tie up his property in a trust estate, but the law recognizes his right to do so, and it is the solemn duty of the court to protect this right so long as the law authorizes it. The pleadings show that the management of the trustees has so reduced the property by the course they have taken in dealing with it that the income is insufficient to pay the annuity to John F. Powell and his wife. There is nothing clearer in the will than it was the purpose of the testator to maintain a support for his son and his son's wife during their lives. I can bring myself to no con-

clusion that would sanction the power of the trustees to vary, change, or modify the terms and directions of the will. I think, therefore, that the cause ought to be reversed, and the cause heard on its merits. It may be that the evidence would not sustain the allegations of the bill, but if it does, certainly relief should be granted. If the allegations that no notice was served on John F. and Virginia Powell, and none on any remainderman, be true, the sale should be set aside and held for naught. If it be true, as alleged, that the executor and trustees represented conflicting interest, the sale should be set aside for this reason.

I am authorized to state that SMITH, C. J., concurs in this dissent.

