RIDGEWAY *et al. v.* JONES.

[87 South. 461, No. 21366.]

1. EXECUTORS AND ADMINISTRATORS. *Statutory requirement that executor file vouchers for disbursements for annual accounts mandatory.*

Section 2121, Code 1906 (Hemingway's Code, sec. 1789), making it the duty of an executor to produce and file with his annual accounts vouchers for disbursements made, is mandatory, and it is not within the discretion of the chancellor to dispense at will with this requirement of the statute.

2. EXECUTORS AND ADMINISTRATOR. *Executor may file duplicate of lost vouchers for disbursements.*

Since the vouchers which executors are required to file with their annual accounts are mere receipts for money paid out, there is nothing in the object or purpose sought to be accomplished by their production, or in the nature of the voucher itself which forbids the duplication or substitution of a lost voucher.

3. EXECUTORS AND ADMINISTRATORS. *Executor may not pay claims not probated and allowed.*

An executor has no authority to pay claims against the estate of a decedent which have not been probated and allowed, and he should not be allowed credit for claims so paid.

4. EXECUTORS AND ADMINISTRATOR. *Expenditures for funeral expenses and monument may be allowed if not excessive.*

The reasonableness of expenditures made by the executor for funeral expenses and monument for the deceased testator is a matter which is addressed to the sound judgment and discretion of the chancellor, and an executor may be allowed credit for such expenditures if in the opinion of the chancellor the same are not excessive.

APPEAL from chancery court of Bolivar county.

HON. G. E. WILLIAMS, Chancellor.

Suit by Mollie Roach Ridgeway and others against F. J. Jones, executor of the last will and testament of Samuel Jones, deceased, to contest the executor's first annual account. Decree for respondent, and complainants appeal. Reversed and remanded.

See, also, 84 So. 692.

*Summerville & Summerville* and *Dabney & Dabney,* for appellant.

So far from the estate being indebted to this executor in the sum of ninety-eight dollars and ninety-nine cents, as stated in the decree of the chancellor, the executor appears indebted to the estate in the sum of one thousand seven hundred three dollars and eleven cents.

It is true some of the items of expense incurred and for which the chancellor allowed this executor credit were on account of the last illness and funeral expenses, etc., of decedent. The item of thirty-two dollars and sixty cents for S. H. Harris "medical attention" was certainly a debt that should have been probated as the law requires (See *Hilderbrand* v. *Kinney,* 87 N. E. 832) and not having been probated should be charged back to the executor.

The other items: Embalmer Brown, $50; Casket, $375; Tombstone, $290, even if not excessive in the eyes of our law, while maybe not required to be probated, should certainly be supported by vouchers as the law requires, and not being supported by vouchers, should not have been allowed by the court.

We can hardly believe that this honorable court will endorse the conduct of the chancellor in allowing these claims on the mere say-so of this negro executor unsupported by any receipts or vouchers. Even were the payments of the item of casket three hundred seventy-five dollars and tombstone two hundred ninety dollars regular, so far as the same being supported by vouchers was con-

cerned, which is not the case, the charges were grossly excessive and should not have been allowed at any such sum as charged. True, the executor testified on page 50 that he had the sanction of the other heirs to make these expenditures and we had no way to dispute it. Still there is nothing to support the credits for these amounts in the executor's accounts and they should not have been allowed.

In conclusion we have only to say that this estate has been handled in a most haphazard manner.

Our law required at the time Jones was appointed executor of this estate that claims should be registered and probated and allowed in the court in which the letters testamentary were granted within a year after the first publication of notice to creditors, otherwise the claims would be barred (See sec. 1775, Hemingway's Code); and in the case of executor's accounts, section 1789 provides positively that every item and the amount thereof. "Shall be distinctly stated, supported by legal voucher," etc., and further, that the account must be sworn to.

*Roberts & Hallam,* for appellee.

The agreement about the funeral expenses, tombstone, etc., and the agreement as to the division of the personal property having taken place both before and shortly after the funeral and before the assignment to Messrs. Dabney & Dabney was filed on July 31, 1917, the said Mollie Roach and her assignees who prosecute this appeal in her name for their benefit are estopped to now rue back. Mollie could not induce the executor to make these payments, and then after he had made them, contest their allowance. Nor can her assignees, having undisputedly received her part of the personal property, Mollie could certainly not charge the administrator therewith under any circumstances without offering to return the property she received. In other words Mollie does not come into equity with clean hands, nor does she offer to do equity, and the court will bear in mind that this petition contesting the executor's account

was not originally filed in the name of Mollie for the benefit of the assignees, but was filed by Mollie individually and for Mollie's own personal benefit. Having entered into the arrangement for the burial of the old man, and having become a party to the division of the personal property, Mollie, and those claiming under her, is estopped.

One may as a result of his acts or agreements be estopped to make objections to or to contest the account of a personal representative." 18 Cyc., 1173.

The point is, for the first time, made in this court that the expenses of the last sickness, embalming, tombstone, casket, etc., were not supported in the court below by proper vouchers, and for this reason it is contended that this court should disallow these items, irrespective of the agreement of Mollie Ridgway. The court will observe that the only objection to these items in the court below was that they were not probated claims.

Having elected to stand on one ground of objection in the court below, appellants cannot now set up a wholly different ground. Having tied themselves, they must remain bound, even though these items had not been supported by proper vouchers. But they were. The uncontradicted evidence shows that the vouchers were taken by the executor and afterwards by him delivered to his attorney to prepare his account, and that they were misplaced and could not be found by the attorney.

Although the statute makes it the duty of the executor to obtain vouchers, it does not provide that he shall not be allowed credit for disbursements which are not so supported. This is a matter which lies in the discretion of the chancellor. Any evidence which satisfies the chancellor is sufficient. In the case at bar, however, the executor performed his duty by obtaining proper vouchers. This is the uncontradicted evidence.

We therefore insist that this appeal is without merit; that all of the evidence introduced in the court below sustains the account of the executor and the decree rendered

thereon, and that the decree appealed from should be affirmed.

WILLIAM H. COOK, J., delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Bolivar county, approving the first annual account of Frank Jones, executor of the last will and testament of Samuel Jones, deceased. It appears that Samuel Jones died testate, leaving as his heirs four children, among whom was the complainant, Mollie Roach Ridgeway, and that under the terms of the will all the property, real and personal, of decedent was devised to these four children in equal shares, and appellee, a son of decedent, was named executor of the will without bond. Appellee duly qualified, and entered upon the discharge of his duties as executor, and notice to creditors to probate and register their claims was published. An appraisement of the personal property was made, and on April 9, 1917, the report of the appraisers was filed, and this appraisement showed a total valuation of the personal property to be one thousand forty dollars and twenty-five cents, while property of the value of four hundred thirty dollars was set aside to the heirs as exempt. On September 11, 1917, the executor filed an inventory showing that one thousand fifteen dollars additional had come into his hands.

Complainant, Mollie Roach Ridgeway, having become dissatisfied with the administration of the affairs of the estate, employed Messrs. Dabney & Dabney and Somerville & Sommerville, attorneys, to represent her in the settlement of the estate, and as compensation for their services she executed to them an assignment of a one-third interest in her share of the personal property and a half interest in her share of the real estate devised to her by her father.

After the filing of the inventory on September 11, 1917, nothing further appears to have been done in the admin-

istration of the estate until June 9, 1919, when, at the instance of complainant's attorneys, a citation was issued to the executor, requiring him to file an account of his administration of the estate on or before the 1st Monday in July, 1919; and on the 1st day of the following October an account was filed by the executor. This account was not supported by any vouchers, but the executor attached thereto his affidavit that vouchers for the various items of expenditures shown on the account had been delivered to his attorney and lost.

On October 2, 1919, complainant, through her attorneys, filed a petition, contesting the account filed by the executor, and praying for an order requiring the executor to pay over to complainant her distributive share of the estate. This petition did not come on for hearing until the following February, and in the meantime it appears that complainant, without the knowledge and consent of her attorneys, made a settlement with the executor, and for a recited consideration of three hundred dollars she executed a deed conveying to the executor all her right, title, and interest in all the real and personal property belonging to the estate of Samuel Jones deceased, and therefore, at the hearing of this petition and contest the testimony of this complainant was not available. Upon the hearing of this contest the testimony of several witnesses, including the executor, was heard, and the court dismissed the contest and entered a decree approving the account with the exception of one item, and from this decree Dabney & Dabney and Somerville & Somerville, assignees, for themselves prayed for and were granted an appeal to this court.

After the case reached this court on appeal appellee filed a motion to dismiss the appeal, and on the hearing of this motion the right of these attorneys to prosecute this appeal was upheld in an opinion by Chief Justice Smith, which may be found reported in 84 So. 692.

We think the decree approving this executor's account as filed was erroneous, and, since this cause must be re-

versed, we will undertake to state our views in regard to the various items of debit and credit in order that an account may be prepared and a decree entered in accord therewith.

It appears from the evidence offered on the hearing of the former contest that the executor took possession of all the property covered by the report of the appraisers, including the exempt property, amounting to one thousand forty dollars and twenty-five cents; that a bale of cotton included in this appraisement was sold for an excess of seventy-seven dollars and eighty-two cents over the appraised value; that the executor collected the sum of one hundred sixty-nine dollars and seventy-three cents on a promissory note which was not included in the appraisement or the additional inventory filed by the executor; and that there also came into the hands of the executor the additional sum of one thousand fifteen dollars, as shown by the inventory filed September 11, 1917. The executor should be charged with these various amounts, making in the aggregate the sum of two thousand three hundred three dollars and forty cents.

On the hearing of the former contest there was some evidence that, prior to the assignment to these appellants of an interest in said estate, all the personal property included in the appraisement, except the bale of cotton, had been ratably distributed among the four legatees, and, if such be the case, the executor may be allowed credit for these disbursements upon the production of proper vouchers therefor from the legatees.

It appears from the record that only one claim has been probated against the estate, and this item, amounting to two hundred sixty dollars and forty-seven cents may be allowed upon filing voucher therefor. In the administration of the estate certain expenditures were made which are proper charges against the estate, and which may be allowed upon the presentation of vouchers, those items being as follows: ninety-two dollars and thirty-eight cents for taxes, twenty-five dollars for attorney's fees, twenty-

four dollars for appraiser's fees, and four dollars ninety-one cents for advertising notice to creditors. It also appears that at the time of the death of testator the real estate was under mortgage, and that, in order to save the real estate from sale thereunder, the executor paid the sum of one hundred eighty dollars as interest on this indebtedness, and upon production of vouchers for this expenditure he may be allowed credit therefor.

There appears on the account filed by the executor an item of thirty-two dollars and sixty cents for medical attention to the testator during his lifetime, and also an item of two hundred ninety dollars and seventy-four cents due by decedent for lumber. Neither of these items was probated, and as the time for probation of claims has long since expired, these claims must be disallowed.

The account filed by the executor shows expenditures for funeral expenses and tombstone amounting to the sum of seven hundred fifteen dollars. This expenditure is attacked by the appellants as being unreasonable and excessive, but the reasonableness of these funeral expenses is a matter which is addressed to the judgment and discretion of the chancellor, and if, upon investigation, the chancellor is of the opinion that this expenditure is not excessive, these items may be allowed when proper vouchers therefor are produced and filed.

The record discloses the fact that the executor collected three hundred fifty dollars as rent of the lands of decedent's estate, and appellants contend that this sum should be charged against the executor on his annual account. There was some contention in the court below that this real estate had been rented by the executor under an order of the court, but the evidence introduced at the former hearing shows that no such order was made, and that no rent was collected by the executor until the third year after the death of testator, and we approve the action of the chancellor in declining to charge this rent to the executor.

Finally, it is contended by appellee that, while the statute makes it the duty of an executor to obtain vouchers, it does not provide that he shall not be allowed credit for disbursements which are not so supported, and that the requirement that vouchers be produced is a matter which lies wholly in the discretion of the chancellor, and that any evidence which satisfies the chancellor is sufficient. The statute, however, is not so written. The requirement that annual accounts of the executors and administrators shall be supported by vouchers is found in section 2121, Code of 1906 (Hemingway's Code, section 1789), and is as follows:

"Every executor or administrator, at least once in each year, or oftener if required by the court, shall present, under oath, an account of his administration, showing the disbursements; every item of which and the amount thereof shall be distinctly stated, supported by legal voucher, and it shall also show the receipts of money, and from what sources. . . . The court shall examine all such accounts and the vouchers, and if satisfied that the account is just and true, it shall decree the same approved and allowed as a correct annual settlement."

Section 2122, Code of 1906 (Hemingway's Code, section 1790), provides the form in which the vouchers must be prepared, and provides that they shall be filed by the clerk and thereby they become a part of the record of the administration of the estate and are preserved for the inspection of any one interested therein.

The meaning of these sections is not uncertain, the language is plain and mandatory, and the object sought to be accomplished thereby is a wise and reasonable one. Compliance with the requirement that vouchers shall be produced does not lie wholly in the discretion of the chancellor, and if circumstances may arise which would justify the acceptance of other evidence of the correctness of disbursements shown on an account, such evidence must be produced under well-recognized rules.

A voucher is a mere receipt for money paid, and there is nothing in the object or·purpose sought to be accomplished by their production, or in the nature of the document itself, which forbids the duplication or substitution of a lost voucher. There is nothing in this record to indicate that it is difficult or impossible, or that any effort has been made, to procure duplicate or substitute vouchers. It may be that a voucher or vouchers may be lost under circumstances which render it impossible to secure a duplication or substitution thereof, and that when this fact is sufficiently shown secondary evidence of the contents of the lost vouchers may be received, but no such case was made in this record, and that question is not here presented.

The decree of the court below will be reversed, and the cause remanded for further proceedings not inconsistent with the views herein expressed. ·

*Reversed and remanded.*