491 So.2d 189 (1986)
Jean Cox HARPER, Individually & As Executrix of the Estate of Robert Lex Harper
v.
Michael S. HARPER, et al.
No. 54632.
Supreme Court of Mississippi.
February 12, 1986.
As Modified on Denial of Rehearing June 11, 1986.
*191 Jack W. Brand, William S. Painter, Gerald, Brand, Watters, Cox & Hemleben, Jackson, for appellant.
Jamie G. Houston, III, Hassell H. Whitworth, Watkins & Eager, Jackson, for appellees.
En Banc.
PRATHER, Justice, for the Court:
The former opinion is hereby modified and this version substituted therefor.
This appeal brings into issue alleged conflicting fiduciary duties. The conflict arose when a testator appointed his widow to the multiple roles of executrix of his will, beneficiary of a one-half interest in his estate, corporate officer in the family business, and trustee of the residuary one-half interest belonging to his children as beneficiaries of the testamentary trust. Alleging dissipation of the assets of the estate, three adult children of the parties as residuary beneficiaries of the trust filed suit against their mother for an injunction, accounting, surcharge of funds, judgment, removal of executrix, dissolution of trust and distribution of estate.
The parties to this lawsuit are the heirs of Robert Lex Harper, who died on November 4, 1978, in Hinds County. Robert Lex Harper's widow, Jean Cox Harper, was appointed executrix of his estate and is the appellant here. The appellees are the three adult children of Robert and Jean Harper, Robert William Steven Harper, Michael Stewart Harper, and Shawn Kathleen Harper. Another child, David Haley Harper was made a party defendant with his mother, who was sued as executrix and as an individual. A guardian ad litem was appointed by the court to represent the interests of David, who is deaf. From an adverse holding in the Chancery Court of Hinds County surcharging the executrix and granting judgment of $257,000.00 to the children, the executrix, Mrs. Jean Cox Harper, appeals, and her adult children cross-appeal. The assignments of error of both appeal and cross-appeal are as follows:
(1) On appellant's appeal, Mrs. Harper asserts the lower court erred in granting appellees' motion for reconsideration and surcharging Mrs. Harper $93,348.00 for failing to obtain court authority to continue the operation of Harper Supply Company, a corporation, following the death of R.L. Harper; however, appellees and cross-appellants contend that the trial court erred in surcharging Mrs. Harper only $93,348.00, the liquidated value of Harper Supply Company, rather than $1,245,989.10, the operational losses of the company, or alternatively $334,745.19, the book value of the company as of December 31, 1978.
(2) Appellant also contends that the trial court erred in surcharging Mrs. Harper $68,684.89 as the loss in value to the estate resulting from a division of property between the estate and N. Sidney Harper; however, the cross-appellants contend that the trial court erred in inadequately surcharging Mrs. Harper only $68,684.89 for the loss resulting from the division of property between the estate and N. Sidney Harper.
(3) Appellant Mrs. Harper challenges the trial court's ruling in surcharging Mrs. Harper $24,520.75 for legal fees paid to Mr. O. Murray McNeely after October, 1979, and the sum of $9,405.99 for the interest paid to the United States and the State of Mississippi due to the late filing of the estate tax returns. On the contrary, cross-appellant children assert error in surcharging Mrs. Harper only $24,520.75 for legal fees paid to O. Murray McNeely, contending the amount should not have been less than $49,297.40.
Additionally, the direct appeal of Mrs. Harper assigns as error:
(4) The trial court erred in surcharging Mrs. Harper $49,651.73 due to her payment of debts of the decedent which were not probated, registered or allowed; and
(5) The trial court erred in removing Mrs. Harper as executrix of the estate.
The cross-appellants seek reversal on their cross-appeal of additional assignments of:
*192 (6) The lower court erred in failing to surcharge Mrs. Harper $47,478.00 for salary and $16,295.86 for other personal benefits she received from Harper Supply Company.
(7) The trial court erred in failing to surcharge Mrs. Harper $240,000.00 for causing the estate to assume an unenforceable debt and to pledge unencumbered real property.

I.
Robert Lex Harper died testate on November 4, 1978, at the age of 47. Surviving Robert Harper were his wife of 28 years, Jean Cox Harper (appellant herein), and four children: 27 year old Robert William Stephen Harper, 25 year old Michael Stewart Harper, 21 year old Shawn Kathleen Harper and 19 year old David Haley Harper (appellees herein).
At the time of his death, Robert Harper together with his brother, N. Sidney Harper, owned interests in several closely held corporations and partnerships. According to the Federal Estate Tax Return, the adjusted gross value of the Harper estate was approximately $1,200,000.00.
Robert L. Harper had executed a valid Last Will and Testament naming his wife, appellant Jean Cox Harper, as executrix, waiving bond, accounting and appraisal. The will first provided that personalty go to his surviving spouse, Mrs. Harper. Secondly, Robert Harper bequeathed to Mrs. Harper an amount equal to one-half of his "adjusted gross estate" as determined for federal estate tax purposes, known as the maximum marital deduction. By the terms of the will, the remainder of the estate was to be placed in a trust known as the "Harper Trust" with Mrs. Harper as trustee for the benefit of his four children. Generally, the powers granted under the trust to Mrs. Harper as trustee were as broad as the power of the testator himself in his lifetime.
Prior to his death, Robert Harper was president of Harper Supply Company, a position he had occupied since November 21, 1977 and had been a director of Harper Supply Company since 1974. At the time of her husband's death, Mrs. Harper was secretary/treasurer of Harper Supply Company, a position she had held since November 21, 1977. Mrs. Harper had also been a director of Harper Supply Company since 1974. N. Sidney Harper, the decedent's brother, was vice-president of Harper Supply Company at the time of his brother's death and had been a director of the corporation since 1974.
On November 27, 1978, Mrs. Harper as director, secretary-treasurer and executrix, called a special meeting of the shareholders and directors of Harper Supply Company. Michael S. Harper, son of the decedent, was elected to fill the unexpired term of Robert Harper as director. Mrs. Harper was elected to fill the unexpired term of Robert Harper as chairman of the board, and also president at an annual salary of $52,000.00 per year, the same amount her husband had earned at the time of his death.
Harper Supply Company had not returned a profit since 1976. During the calendar year of 1978, the corporation lost approximately $300,000.00. Following Robert Harper's death, Harper Supply Company continued to lose money. In the Spring of 1979 the Harper Estate began negotiating with Sidney Harper for the purpose of transferring jointly owned assets in such a manner as to completely divide the respective interest of the estate and Sidney Harper. On July 12, 1979, an agreement was reached between Sidney Harper, Mrs. Harper and Michael S. Harper. Under the terms of the agreement, the Harper Estate was to transfer all its stock in Harper Foundry & Machine Company, another closely held family corporation, to Sidney Harper. In return, Sidney Harper was to transfer to the estate all of his stock in Harper Supply Company. Additionally, the agreement called for Mrs. Harper to convey the estate's 25% interest in the Harper & Elliott Partnership and the estate's 25% interest in Mississippi Valley Leasing Corporation to Sidney Harper. The agreement further provided for the *193 transfer of numerous parcels of real estate between the parties.
As executrix of the Harper Estate, Mrs. Harper spent $49,651.73 in payment of debts of the estate which were not probated, registered or allowed. These payments included a $39,770.84 check to Harper Supply Company in payment of an unprobated debt of Robert Harper to Harper Supply. At the time the check was issued in October of 1979, Harper Supply Company owed an outstanding debt to Robert Harper in the amount of $21,328.00, which cross-appellants contend should have been offset against the $39,770.84 before payment.
From November 10, 1978 until the bill of complaint was filed in October of 1980, Murray McNeely acted as the attorney of record for the Robert Harper Estate. Mrs. Harper, as executrix of the estate, paid Mr. McNeely $49,297.40 for his services without obtaining court approval.
On April 30, 1979 the appellant, Mrs. Jean Harper, entered into an agreement with two of the appellees, Michael Harper and Stephen Harper. Under the terms of the agreement, Mrs. Harper was to resign as president of Harper Supply Company, and allow Michael Harper to assume that office. In return, Mrs. Harper was to continue receiving a weekly salary of $750.00 and to retain possession of the company car and company telephones maintained at her home. The agreement further provided that any complaint Stephen and Michael Harper may have had regarding Mrs. Harper's operation of Harper Supply Company "are now compromised and settled."

II.
Some preliminary remarks are in order. Duties and rights of executors and administrators with the will annexed are generally set forth in Miss. Code Ann. § 91-7-1 et seq. (1972), but specifically see § 91-7-47 which provides:
Every executor or administrator with the will annexed, who has qualified, shall have the right to the possession of all the personal estate of the deceased, unless otherwise directed in the will; and he shall take all proper steps to acquire possession of any part thereof that may be withheld from him, and shall manage the same for the best interest of those concerned, consistently with the will, and according to law. He shall have the proper appraisements made, return true and complete inventories except as otherwise provided by law, shall collect all debts due the estate as speedily as may be, pay all debts that may be due from it which are properly probated and registered, so far as the means in his hands will allow, shall settle his accounts as often as the law may require, pay all the legacies and bequests as far as the estate may be sufficient, and shall well and truly execute the will if the law permit. He shall also have a right to the possession of the real estate so far as may be necessary to execute the will, and may have proper remedy therefor.
Duties of an executor have been outlined further in the case law of Yeates v. Box, 198 Miss. 602, 22 So.2d 411 (1945), wherein this Court stated the executor's duties are "(1) to reduce to possession the personal assets of the testator; (2) to pay the testator's debts; (3) to pay legacies; and (4) to distribute the surplus to the parties entitled thereto. Powers granted an executor are coextensive with the will and therein grounded. Ricks v. Johnson, 134 Miss. 676, 99 So. 142 (1924); Grant v. Spann, 34 Miss. 294 (1857).
The duly appointed executor shall carry out all of the provisions of the will that may be lawful. The will is the source and measure of the power of the executor. Ricks, 99 So. at 146. And in determining the powers of executors, the basis for all construction of language within the will is to determine first the intention of the testator as gathered from the whole will. Yeates v. Box, 198 Miss. at 602, 22 So.2d at 411.
One serving in the capacity of executor or administrator is an officer of the Court and holds a fiduciary relationship to all parties having an interest in the estate. A trust arises from the appointment of the *194 executor or administrator. Schreiner v. Cincinnati Altenheim, 61 Ohio App. 344, 22 N.E.2d 587 (1939); 33 C.J.S., Executors and Administrators, § 3, p. 878 (1942).
Thus in answering questions of the powers, duties, and liabilities of executors, this Court applies the above Mississippi statutory and case law, as well as the expressed intent of the testamentary instrument itself.
In answering these questions this Court must establish a standard of care chargeable to an executor in evaluating charges of maladministration. It appears proper that since a trust and fiduciary relationship is established by these connections, this Court holds that the same standard of care applicable to a general trustee applies to an executor or administrator. This standard is expressed as follows:
Ordinary care, skill, and prudence are normally required of trustees in the performance of all their duties, unless the trust instrument provides otherwise. The rule is "that trustees are bound in the management of all the matters of the trust to act in good faith and employ such vigilance, sagacity, diligence and prudence as in general prudent [persons] of discretion and intelligence in like matters employ in their own affairs. The law does not hold a trustee, acting in accord with such rule, responsible for errors of judgment." "All that equity requires from trustees is common skill, common prudence, and common caution." [Footnotes omitted]
Bogert, Law of Trusts, § 93 (5th ed. 1973). See also, Scott, Scott on Trusts, § 174 (3rd ed. 1967).
Applying to this case the general standard of care and skill that a person of ordinary prudence would exercise in dealing with his or her own property, this Court now analyzes the assignments of error on appeal and cross-appeal in light of this standard.

III.
Did the trial court err in granting appellees' motion for reconsideration and surcharging Mrs. Harper $93,348.00 for losses resulting from the continued operation of Harper Supply Company following the death of Robert Harper? As suggested by the cross-appeal, was this award inadequate?
Harper Supply Company is a closely held family corporation of which the decedent owned 50.03% of the stock, his brother owning the remainder.
In its original opinion, the trial court found that Harper Supply Company's financial problems dated back several years before the death of Robert Harper. The court expressly declined to find that Mrs. Harper's actions were solely responsible for the downfall of the company and accordingly refused to surcharge Mrs. Harper for any losses in value of Harper Supply Company's stock due to alleged mismanagement of the company. Upon motion for reconsideration, the trial court made a finding that Mrs. Harper did in fact continue to operate Harper Supply Company without court authority from the date of Robert Harper's death until the corporation closed. The court surcharged Mrs. Harper $93,348.00 for the loss to the estate occasioned by her continued operation of the company.
Two questions will be considered under this assignment of error: (A) Whether the continued operation of a corporation by the executrix of a majority shareholder requires court approval; if so, should an executrix acquire authority to vote stock owned by the decedent in a closely held corporation? (B) Whether the continued operation of Harper Supply Company constituted a breach of Mrs. Harper's fiduciary duty to the beneficiaries.

A.
In finding that the appellant was required as a matter of law to obtain court approval for the continued operation of Harper Supply Company, the trial court apparently relied upon Miss. Code Ann. § 91-7-173 (1972) which provides as follows:

*195 The chancery court or the chancellor in vacation shall have the power to authorize the executor or administrator of a decedent, when not contrary to the provisions of a will, to continue as a going concern for a period of not exceeding three (3) years after the grant of letters, the business in which the decedent was engaged at the time of his death and, where such business is a mercantile or other business of like nature, to allow the purchase of goods in small quantities necessary to replenish the stock and promote the sale thereof, and to permit the sale of the stock of goods at retail in the regular course of business. Said stock of goods, however, shall not be sold at less than cost thereof, except by a previous order of the court or chancellor.
Appellant argues that this code section applies only to unincorporated businesses, while appellees contend that the section applies to corporations. No Mississippi cases were found addressing the issue of whether section 91-7-173 contemplates court authority for the continued operation of a corporation by the executrix as a majority shareholder. Existing Mississippi cases applying § 91-7-173 involve the continued operation of sole proprietorships. See e.g., Barry v. Barry, 198 Miss. 677, 21 So.2d 922 (1945) (plantation); Crescent Furniture and Mattress Co. v. Morgan, 178 Miss. 824, 173 So. 290 (1937) (retail furniture shop).
The management of a corporation is vested in its board of directors and not the stockholders. Miss. Code Ann. § 79-3-67 (1984 Supp.); 18 Am.Jur.2d, Corporations § 484 at 977 (1965). Where the business of a decedent is in a corporate form, the estate of the decedent is the owner of the corporate stock, but not the business itself.
It is apparent that section 91-7-173 refers to unincorporated businesses and not incorporated ones in which the decedent owns a stock interest, even if it is a controlling stock interest. This Court so holds. Therefore, since the estate is the stockholder, its power is in exercising the voting rights incident to stock ownership. Should an executrix, then, secure court authority to exercise the power to vote the stock?
The majority of jurisdictions that have addressed this issue hold that an executor or administrator of a stockholder has a right to vote stock standing on corporate books in a decedent's name at the time of death. 7 A.L.R. 3rd 629, 631 (1966). Mississippi's Business Corporations Act recognizes such a right. See Miss. Code Ann. § 79-3-63 (1972) ("shares held by an administrator, executor, guardian or conservator may be voted by him, either in person or by proxy without a transfer of such shares into his name.")
This Court concludes that no court authority per se was necessary to authorize this executrix to exercise the estate's voting rights of the stock in Harper Supply Company. Since the chancellor surcharged the executrix for the company's loss strictly because she did not secure court authority to operate the business, and since this Court now holds that court authority was not necessary in an incorporated business, this Court concludes that the surcharge per se against Mrs. Harper of $93,348.00 in and of itself was improper based upon this ground, but must be judged upon the general standard of care to act prudently in her fiduciary duty to the beneficiaries.

(B)
Appellees contend that, even if § 91-7-173 is inapplicable to corporations, this Court should uphold the surcharge imposed below based upon Mrs. Harper's breach of her fiduciary duty to the beneficiaries of the estate. Appellees rely upon Estate of Kurkowski, 487 Pa. 295, 409 A.2d 357 (1979), in which the Supreme Court of Pennsylvania held that an administratrix breached her duty to the beneficiaries of the estate by her continued operation at considerable loss of a corporation. The court in Kurkowski stated that, even if the statutory provision requiring court authority for the continued operation of decedent's business were inapplicable, "administratrix *196 nevertheless breached her common law fiduciary duty in failing to liquidate the estate for purposes of distribution to decedent's heirs and, therefore is chargeable with the losses incurred." 409 A.2d at 360.
Appellant contends that in the case sub judice, that Article V of the will of Robert L. Harper expressly provided that:
(11) In the administration of the Trust established pursuant to this Will, the Trustee shall have the following powers, duties and discretions, in addition to others now or hereinafter conferred by law, to be exercised in her absolute discretion in any capacity to which such powers may be applicable:
... .
(c) To continue and to operate any business or interest therein owned by the Trust for such time as the Trustee shall deem advisable; to engage in any other business; to become or remain a partner, general or special, in any business; to incorporate any such business and hold the stock thereof as an investment; and to provide capital for and employ agents to manage and operate any such business without liability for the acts of any such agent or for any loss, liability, or indebtedness resulting from the operation thereof if the management is selected with reasonable care.
... .
(e) To exercise all rights as the owner of corporate securities, including among others the right to vote... . (Emphasis added).
Upon this testamentary grant, Mrs. Harper contends that she has authority to act in her absolute discretion.
However, it must be noted that these are the enumerated powers of the testamentary trustee, as opposed to those of the executrix. This Court has noted that one person may be named as both executor and as trustee. Yeates v. Box, 198 Miss. at 602, 22 So.2d at 411. However, the executor performs only such duties and powers granted to him as the Mississippi statutory or case law or as the testamentary instrument designates. The authority designated to the executrix in this will comprises only (1) waiver of bond, accounting and appraisal, (2) payment of the legal debts probated, registered, and allowed and to pay estate taxes assessed, and (3) payment to herself all articles of personal, household, or domestic use and one-half of the remainder[1] of his estate, and (4) payment of the residue of the estate to herself as trustee of the Harper children trust. The authority relied upon by the appellant is the power designated only for the testamentary trustee, and such authority does not transfer to the executrix unless the will so designates. The will here does not so designate.
Additionally, it must be noted that the testamentary trust has not yet arisen for the reason that it has not been funded with a corpus. In order for there to be a valid trust, there must be a delivery and acceptance of the trust property from the settler to the trustee. 89 C.J.S. Trusts § 63, p. 837 (1955); Bogert, Law of Trusts § 31 (5th ed. 1973). If a trust is not funded with a corpus, then a valid trust does not exist leaving the trustee with no power. As quoted in Warner v. Merchants Bank and Trust Co., 2 Conn. App. 729, 483 A.2d 1107 (1984).
"It is elementary that there can be no trust without a res, that there must be a definite subject matter. Bassett v. City Bank & Trust Co., 115 Conn. 1, 21, [160 A. 60, 69 (1932)] 81 A.L.R. 1488; Shippee v. Pallotti, Andretta & Co., Inc., 117 Conn. 472, 477 [168 A. 880 (1933)]."
From the record, this Court finds no judicial authority to transfer any estate property to the testamentary trust. Therefore, Mrs. Harper's authority to act as executrix is not governed by the trust powers granted to her as testamentary trustee because the trust has not been activated. The provisions *197 of the will control. Looking to the will provisions, apart from her testamentary trust powers, no additional powers other than statutorily designated ones were granted, except the waiver of bond, accounting, and appraisal. Therefore, in analyzing this assignment, this Court will look to Mississippi statutory law and the general law of trusts.
The threshold question of whether the trust had arisen was answered in the negative. The court concluded that there was no authority to exercise the trustee powers until the trust res was identified and established. The next question to be answered then is: if there are no powers of the trustee, are there likewise no duties as trustee until such time as the trust res is established?
In analyzing this estate valued at approximately $1,200,000, technically Mrs. Harper individually was to receive $600,000, being one-half of the adjusted gross estate. The assets to satisfy this bequest were to be distributed at the values on the date of distribution. It is therefore apparent that the widow's bequest was fixed and bears no part of the risk of monetary loss until such time as the residuary estate was depleted. The conflict of fiduciary duties of Mrs. Harper as executrix and Mrs. Harper as testamentary trustee here becomes apparent. This Court concludes that the duty to act prudently toward the residuary estate was a duty of Mrs. Harper as executor.
The next question is was the proof sufficient to establish that Mrs. Harper breached her duty as executrix by imprudent actions. In the case sub judice, Mrs. Harper operated Harper Supply Company, as chairman of the board and president, from November, 1978 until its insolvency in February of 1980. During this period the corporation lost over $350,000.00 and its assets were completely depleted. During this fifteen month period, Jean Harper drew a total salary of $47,478.00 and drove an automobile paid for by the corporation. Appellees point out that, as Mrs. Harper's bequest under the terms of her husband's will was fixed, she had all to gain and nothing to lose by mismanaging the corporation to her personal benefit thereby depleting only those assets which would have flowed to the heirs under the terms of the residual trust. Appellant distinguishes Kurkowski, in which the decedent owned 100% of the corporate stock, from the case sub judice, which Robert Harper owned only 50% of the stock of Harper Supply Company, pointing out that under Mississippi law Mrs. Harper was powerless to liquidate the corporation since a two-thirds stockholder's vote is required to effect a corporate dissolution. Miss. Code Ann. §§ 79-3-165, 79-3-167 (1972). Appellees respond by pointing out that formal liquidation was not the only means by which Mrs. Harper could have curtailed the losses suffered during this period by Harper Supply Company.
The Court notes that the Harper Supply Company had been operating at a loss for two years prior to Robert Harper's death, losing approximately $200,000.00 during 1979 and $300,000.00 during 1978. For that reason, the chancellor in his original opinion was unable to conclude that Mrs. Harper was solely responsible for the demise of the corporation. The chancellor's reasoning on this point is not altered by the subsequent granting of the motion for reconsideration with the resulting surcharge. The surcharge was based solely on Mrs. Harper's failure to obtain court authority for continued operation of Harper Supply.
The dispute between this mother and children appears from the record to have begun when Mrs. Harper hired a man without qualification to be general manager and permit him to live in her home with her. From a reading of the record it appears that Mrs. Harper made several bad business judgments but they are not sufficient to charge her with failure of the total business loss.
Supportive of this view is the case of Poindexter v. First National Bank of Winston-Salem, 244 N.C. 191, 92 S.E.2d 773 (1956) wherein that Court stated:

*198 Under the law of this, as well as other jurisdictions, an administrator is not an insurer of the assets committed to his care in the settlement of his decedent's estate. In the ordinary course of the administration all that is required of him is that he act in good faith and with such care, foresight and diligence as an ordinarily sensible and prudent man would act with his own property under like circumstances. Turnage v. Worthington, 204 N.C. 538, 168 S.E. 823; Tayloe v. Tayloe, 108 N.C. 69, 12 S.E. 836; Syme v. Badger, 92 N.C. 706; Patterson v. Wadsworth, 89 N.C. 407; Green v. Rountree, 88 N.C. 164.
Therefore, this Court holds that a surcharge based upon per se failure to secure court authority is not proper under circumstances where the estate owns only the stock of a corporation, not the business itself. Further, as to the losses occasioned based upon a breach of fiduciary duty of the executrix to preserve the assets, the court holds that the proof failed to show the loss attributable to this executrix by her failure to act prudently in the administration of this estate.
This Court therefore reverses the chancellor's granting of a surcharge on this issue. The cross-appeal on this point is without merit.

IV.
Did the trial court err in surcharging Mrs. Harper $68,684.89 for the loss in value to the estate resulting from the division of property between the estate and N. Sidney Harper? Or, as suggested by the cross-appeal, was that award inadequate?
The trial court found that the July 12, 1979 agreement between the estate and N. Sidney Harper (brother and partner of the decedent), by which the jointly held business stocks of the parties were divided, was not in the best interest of the estate and resulted in a substantial loss to the estate. Accordingly, the court surcharged Mrs. Harper $68,684.89, the amount of the loss to the estate.
Mrs. Harper's argument on appeal is simply that the surcharge for the loss to the estate resulting from this exchange of assets was erroneous inasmuch as she was entitled to rely upon the advice of her attorney and her accountant in negotiating the agreement with Sidney Harper.
The standard of care required of an executor is that of a reasonably prudent person.
Executors and administrators, in the administration of the estate, are not required to use the highest degree of skill, but only ordinary care and diligence. They are not required to exercise any higher skill and prudence than that which is imposed upon any other agent or trustee; they are not insurers or guarantors. The measure of their care in the management and closing of the estate is that which an ordinary prudent [person] would exercise under like circumstances in the management of his own affairs.
New York Indemnity Co. v. Myers, 161 Miss. 784, 138 So. 334, 336 (1931). No Mississippi cases are cited or found excusing an executor's negligence on the ground of reliance upon expert advice. It should be noted that, in petitioning the chancery court for approval of the property division, Mrs. Harper represented to the court that the transfer would "not affect the value of the estate," but "merely cause a change in the form of a portion of such assets."
By cross-appeal, appellees argue that the surcharge assessed by the chancellor was insufficient inasmuch as the actual loss to the estate from the transaction was $99,935.85.
The question of the proper amount of the surcharge boils down to a dispute between the parties as to the appraised value of two pieces of real estate involved in the transfer. Accountant Harry Shaw testified that, during negotiations regarding the transfer, he received information from appraiser James Kelly reflecting the value of parcel 1 to be $130,200.00 and the value of parcel 7 to be $150,500.00. Mr. Kelly, however, testified that he did not give these figures to Mr. Shaw and that, according to his handwritten notes in July of 1979, the *199 allocation would be $84,000.00 to parcel 1 and $196,700.00 to parcel 7. In assessing the surcharge, the chancellor apparently chose to accept the testimony of Mr. Kelly which was based upon calculations by him contemporaneous to the transaction, rather than the figures of Mr. Shaw which were prepared in contemplation of litigation.
In negotiations for this property division, the basis of the division was to be based on the appraised fair market value. The parties secured court approval of these exchanges based upon the appraisals. Mrs. Harper and the court relied upon these expert opinions relating to value as persons of ordinary care and skill would do under like circumstances in the management of their own affairs. Therefore, this reliance relieves Mrs. Harper of a surcharge imposed against her on this issue. Admittedly, Mrs. Harper owed a duty as executrix to preserve the assets of the estate, but her responsibility was fulfilled when she sought expert advice as to the fair market value and secured court approval for the transfer. The surcharge against the executrix is therefore reversed on the issue, and this Court holds that appellees' cross-appeal on this point is without merit.

V.
Did the lower court err in surcharging Mrs. Harper $49,651.73 for her payment of debts of the decedent which were not probated, registered, or allowed?
Appellant Harper challenges the trial court's surcharge for payments of debts of Robert Harper which were not probated, registered or allowed. Mrs. Harper admitted making payments for this purpose in the amount of $49,651.73. Mrs. Harper also acknowledged that no claims against her late husband had been probated.
Miss. Code Ann. § 91-7-151 (Supp. 1985) provides that claims against an estate must be registered, probated and allowed within 90 days of publication or else they are barred. Miss. Code Ann. § 91-7-155 (1972) provides that an executor "shall not pay any claim against the deceased unless the same has been probated, allowed, and registered." It should be noted that the last will and testament of Robert L. Harper expressly directed his executrix "to pay all of my legal debts which may be probated, registered and allowed against my estate." Miss. Code Ann. § 91-7-49 (1972) provides that the directions of a will regarding the payment of debts shall be followed by an executor.[2] Mississippi case law, as well, recognizes that an executor is without authority to pay claims that have not been probated or allowed. Ridgeway v. Jones, 125 Miss. 22, 87 So. 461 (1921).
Therefore, the surcharge here is proper as the action of the executrix was without authority of Mississippi statutory law, the testamentary instrument, or court approval. The surcharge against the executrix of $49,651.73 is affirmed.

VI.
Did the lower court err in surcharging Mrs. Harper $24,520.75 for legal fees paid to Mr. O. Murray McNeely after October, 1979? Or as cross-appellants contend, should all attorneys fees of $49,279.40 have been disallowed?
O. Murray McNeely served as the attorney for the estate from the time the original petition for probate was filed until the bill of complaint was filed by the appellees in October of 1980. The trial court surcharged Mrs. Harper for the amount of attorney's fees paid from the estate to Mr. McNeely after October of 1979 when, in the chancellor's opinion, the estate could and should have been closed.
Mrs. Harper challenges this surcharge arguing that she was not required to seek court approval of these payments because her late husband's will waived bond, accounting and appraisal.
*200 The payment of attorneys' fee is an expense of the administration of the estate and, as it was incurred after the death of the testator, does not have to be probated. Additionally, the testator may waive the executrix's duty to account. The granting of such a privilege imputes to the executor confidence and trust.
However, upon a charge by the devisees of mismanagement of the executrix, the chancery court may properly require an accounting. Determination of attorneys' fees are judged by the following statute:
Miss. Code Ann. § 91-7-281 (1972) provides as follows:
In annual and final settlements, the executor, administrator, or guardian shall be entitled to credit for such reasonable sums as he may have paid for the services of an attorney in the management or in behalf of the estate, if the court be of the opinion that the services were proper and rendered in good faith. Where the executor, administrator, or guardian acts also as attorney, the court may allow such executor, administrator, or guardian credit for his reasonable compensation as attorney in lieu of his compensation as executor, administrator, or guardian.
In addition, Chancery Court Rule 6.08 provides as follows:
Claims arising after the death of a decedent, such as funeral bills, expenditures for monuments, attorney's fees, widow's allowance, and the like, must be approved by the Court or Chancellor before payment; otherwise payment thereof will be at the risk of subsequent approval by the Court or Chancellor as to the propriety or reasonableness thereof.
Mrs. Harper admitted payments from the estate to Mr. McNeely of $49,297.40 without authorization of the chancery court. On cross-appeal appellees argue that the trial court should have surcharged Mrs. Harper for the entire $49,297.40 which she paid to attorney McNeely without court authorization. It is well-settled that the amount allowable as attorney's fees for services rendered in the administration of an estate rests within the sound discretion of the chancery court. Brown v. Franklin, 166 Miss. 899, 145 So. 752 (1933); Schwander v. Rubel, 221 Miss. 875, 75 So.2d 45 (1954). This Court cannot conclude that the chancellor abused his discretion in allowing the payment of attorney's fees for services rendered prior to the date on which the estate could and should have been closed.
It therefore appears that without prior court approval Mrs. Harper acted at her peril in paying attorneys' fees. This Court does not address the attorney's duty to advise the client of the proper procedure to secure such allowances. The court in its discretion permitted a portion of the fees; the surcharge of the balance of $24,520.75 for legal fees incurred after October, 1979, is affirmed.

VII.
Did the trial court err in failing to surcharge Mrs. Harper for salary and personal benefits she received from Harper Supply Company following Robert Harper's death?
By cross-appeal, appellees argue that the trial court erred in failing to surcharge Mrs. Harper $47,478.00 for the salary she received as president of Harper Supply Company and $16,295.86 for other personal benefits she received from Harper Supply Company.
Mrs. Harper's salary as president of Harper Supply Company was unanimously approved by the other officers and shareholders of the corporation. It is true that Mrs. Harper drove an automobile belonging to the corporation and received other personal benefits from the corporation, including a watts line telephone. However, the record reflects that appellees also obtained personal benefits from the corporation. Michael and Stephen Harper each received $10,000.00 salary from Harper Supply Company for the calendar year of 1979. Michael Harper testified that, while acting as general manager of the corporation toward *201 the end of his operations, he personally decided to pay himself and Stephen Harper $3,000.00 each in severance pay. Moreover, appellee Stephen Harper testified that he and Michael Harper used the company's credit cards for their personal use, making around $2,700.00 worth of charges on the cards near the end of Harper Supply Company's existence.
In a previous portion of this opinion, this Court held that the corporate activities are not within the administration of the estate. But, the Court addresses the issue here because of the charge of conflicting fiduciaries duties of Mrs. Harper. However, the corporate officers approved the salary commensurate with prior amounts and fringe benefits.
Under these circumstances, this Court concludes that the appellee's cross-assignment on this point is without merit.

VIII.
Did the trial court err in surcharging Mrs. Harper for the amount of interest paid on the late filing of the estate tax returns?
The lower court surcharged Mrs. Harper $9,405.99, the amount of interest paid from the estate funds for the late filing of federal and state estate tax returns. Mrs. Harper argues, once again, since the will waived bond, accounting and appraisal, she should not be surcharged for this item. However, her accountability is challenged on charges of mismanagement.
Miss. Code Ann. § 91-7-157 (1972) provides that:
An executor or administrator shall pay all taxes that may be due on real and personal property belonging to the estate.
Previously this Court has enumerated the duties of the executor to collect the assets of the estate and pay the debts. As a consequence of that duty, the executrix is chargeable with such waste, neglect, and dissipation of the estate property as might follow. Further, timely filing of state and federal tax returns is the responsibility of the executrix, and this responsibility cannot be shifted to the accountant. Matter of Estate of Bartlett, 680 P.2d 369 (Okl. 1984). These duties and obligations are those chargeable to the fiduciary and were voluntarily undertaken. Likewise, it was held that failure to timely file a federal estate tax return was not excused as a "reasonable cause" by the taxpayer's reliance on his attorney insofar as the Internal Revenue Service is concerned. As to the taxpayer's reliance upon his attorney to meet the statutory deadline, that is a matter between them. United States v. Boyle, Executor of the Estate of Boyle, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). See also Matter of Chambers, 458 So.2d 691 (Miss. 1984).
This Court holds that the Chancery Court properly held that the penalty and interest assessed against this executrix should be surcharged against the executrix for breach of her fiduciary duty to timely pay debts of the estate. This Court affirms on this issue.

IX.
Did the trial court err in failing to surcharge Mrs. Harper $240,000.00 for pledging unencumbered real property of the estate as security on a corporate debt of Harper Supply Company, but personally guaranteed by the decedent?
Shortly after Robert Harper's death a $240,000.00 open note, jointly made by Harper Supply Company and Robert L. Harper, payable to First National Bank of Jackson, became due. The bank, however, did not probate the debt against this estate. Mrs. Harper agreed with the bank to pledge her personal certificate of deposit in the amount of $200,000.00 as collateral for the bank's renewal of the note until the partnership split with decedent's brother. The bank agreed, and the $240,000.00 note was renewed on January 31, 1979. On October 29, 1979, Mrs. Harper petitioned the chancery court individually, as executrix, and as testamentary trustee, for the authority to substitute two unencumbered parcels of *202 real property owned by the estate as collateral for the $240,000.00 note of the corporation. The petition was granted, and a deed of trust executed mortgaging the property. Appellees argue that inasmuch as the result of this transaction was to place previously unencumbered real property owned by the estate as security for an unprobated $240,000.00 debt of Harper Supply Company and Robert Harper, individually, the trial court should have surcharged Mrs. Harper an additional $240,000.00.
Miss. Code Ann. § 91-7-197 (1972) provides as follows:
When a petition shall be filed to sell or lease land to pay debts or otherwise affecting the real estate of a deceased person, all parties interested shall be cited by summons or publication, which shall specify the time and place of hearing the petition. If the petition be filed by a creditor or by a purchaser to correct a mistake in the description of the land, the executor or administrator shall be cited.
The question is whether beneficiaries under residual testamentary trusts are "parties interested" so as to be entitled to the notice required under section 91-7-197. In Brickell v. Lightcapp, 115 Miss. 417, 76 So. 489 (1917), this Court held that the beneficiary under the testamentary trust was not entitled to summons upon petition of the executor for sale of realty belonging to decedent. 76 So. at 497.
Brickell was the product of an equally divided court, three justices in favor of affirmance and three justices in favor of reversal. It follows therefore that the decree of the trial court in Brickell could not be reversed. However, the opinion submitted by the court was not the opinion of a majority of the court; it merely expressed the views of the justices concurring therein.
Prior decisions of this Court have said that an affirmance by an equally divided court is binding precedent unless and until the same is overruled. Montgomery Ward & Co. v. Harland, 205 Miss. 380, 38 So.2d 771 (1949); Mississippi State Tax Comm'n. v. Brown, 188 Miss. 483, 193 So. 794 (1940). Jefferson Std. Life Ins. Co. v. Ham, 178 Miss. 838, 173 So. 672 (1937).
In light of the present case, the Court hereby overrules Brickell v. Lightcap, 115 Miss. 417, 76 So. 489 (1917) and its progeny, and holds that the residual beneficiaries were "parties interested" and should have been given notice of the encumbering of the property belonging to the estate.
The rationale we implement to overrule Brickell has its genesis in the Brickell dissent. There, Justice Ethridge wrote, "It accords with fundamental justice to have all parties having any rights in a matter brought into court so that they may present whatever facts they may be able to present bearing on the judgment or discretion of the court." 115 Miss. at 452, 76 So. at 500.
Under facts similar to those in the present case, it would not suffice to have only the trustee before the court. There is a conflict of interest between the trustee, personally, and the beneficiaries of the testamentary trust. The court finds it would be unjust to deprive beneficiaries of their valued rights on the theory that they are represented by a trustee when, in fact, the trustee's own rights and interests conflict with the interests of the beneficiaries.
The new rule of law espoused today will apply prospectively only. It will not apply to the facts of the present case. However, there is another ground on which the court finds that Mrs. Harper should be surcharged for encumbering the estate property.
It is undisputed that the $240,000.00 debt incurred by Robert Harper was never probated. As mentioned in section V of this opinion, Miss. Code Ann. § 91-7-151 (Supp. 1985) provides that claims against an estate must be registered, probated and allowed within 90 days of publication or else they are barred. Miss. Code Ann. § 91-7-155 (1972) provides that an executor "shall not pay any claim against the deceased unless the same has been probated, allowed, and registered." Miss. Code Ann. § 91-7-49 *203 (1972) provides that the directions of a will regarding the payment of debts shall be followed by an executor. Mississippi case law, as well, recognizes that an executor is without authority to pay claims that have not been probated or allowed. Ridgeway v. Jones, 125 Miss. 22, 87 So. 461 (1921).
The result of Mrs. Harper's action in encumbering the estate property could be a substantial reduction in the value of the estate passing to the residuary trust. The Court notes, however, that the last will and testament of Robert Lex Harper empowers the executrix to designate which property passes to the legatee and which property passes to the residuary trust. Until the estate is closed and the decisions of the executor or executrix are made, the amount Mrs. Harper should be surcharged cannot be fairly determined by this Court. Therefore, when the estate is ready to be closed and its assets are ready to be distributed, the trial court upon rehearing should surcharge Mrs. Harper for the amount the testamentary trust property has been damaged or is in jeopardy due to the mortgage of the previously unencumbered property.[3] However, Mrs. Harper may elect to take that encumbered property in her devised one-half of the estate.

X.
Did the trial court err in removing Mrs. Harper as executrix of the estate?
Appellant makes only a perfunctory challenge to her removal as executrix of the Harper estate. This Court requires that an executor/executrix bring to the management of the estate the degree of care that an ordinary prudent person would exercise in the conduct of his or her own affairs. New York Indemnity Co., 138 So. at 334. The record in this case, with its ample evidence of the executrix's payment of unprobated claims, failure to timely file estate tax returns, and pay attorney's fee without court approval, amply supports the chancellor's removal of Mrs. Harper as executrix of the Harper estate. See Hancock v. Reedy, 181 Miss. 830, 180 So. 81, 85 (1938) (upholding removal of executrix based upon "her entire lack of knowledge of the real condition of the estate from all the evidence").
Likewise, it is noted that she voluntarily resigned as testamentary trustee. However, when the conflict of interest of Mrs. Harper's duties as executrix, beneficiary, testamentary trustee, and corporate officer arose, she should have resigned.
The trial court's action in removing her as executrix was proper and is affirmed.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, SULLIVAN and ANDERSON, JJ., concur.
ROBERTSON, J., concurs in part and dissents in part.
ROBERTSON, Judge, concurring in part, dissenting in part:
My concern is only with Part IX of the opinion of the Court. I concur with the majority's determination that Brickell v. Lightcap, 115 Miss. 417, 76 So. 489 (1917), and progeny have been wrongly decided and should be overruled. I do not understand, however, why "the new rule of law espoused today" should apply prospectively only and not even to the case at bar.
When previous doctrine is laid aside, complex considerations affect the extent to which the new rule should have retroactive application. Solem v. Stumes, 465 U.S. 638, 642-643, 104 S.Ct. 1338, 79 L.Ed.2d 579, 586-587 (1984); Hall v. Hilbun, 466 So.2d 856, 875-877 (Miss. 1985); Keyes v. Guy Bailey Homes, Inc., 439 So.2d 670, 672-673 (Miss. 1983); Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 465-467 (Miss. 1983). No doubt there are times *204 when, as a matter of practical necessity, the overruling of venerable precedent must be prospective only, e.g., Pruett v. City of Rosedale, 421 So.2d 1046, 1052 (Miss. 1982), but even then the new rule applies to the case at bar. New judge-made rules apply generally to cases pending on direct appeal when the rule was announced, even though the new rule is otherwise non-retroactive. Shea v. Louisiana, 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985).
In a legal system based on precedent, there is "a built-in presumption of retroactivity," Solem v. Stumes, 465 U.S. 638, 642, 104 S.Ct. 1338, 79 L.Ed.2d 579, 586 (1984), a fact the majority seems to have forgotten. There appearing to my mind no circumstances sufficient to overcome this presumption, I would at the very least make it clear that today's ruling controls the case at bar and is wholly applicable in all other cases which may be pending on appeal wherein the same or similar questions may be presented.
NOTES
[1] The last will and testament prescribed a formula for determination of the widow's one-half to comply with existing federal estate tax laws.
[2] Appellant's argument that the provision of the will waiving bond and accounting bringing this case within the rule of Bryan v. Bryan, 175 Miss. 367, 167 So. 56 (1936) appears to be without merit in this specific testamentary provision regarding the payment of debts.
[3] The suggestions from the briefs reflect that the $240,000.00 debt has been reduced considerably since the appeal of this case.