982 So.2d 428 (2007)
In the Matter of the ESTATE OF Nathan McGEE, Deceased: Frances Carolyn Harris Philip, Susan Catherine Harris Couch, Samuel King Harris, David Walton Longmire, James Alan Longmire and Robert William Longmire, Appellants
v.
Margaret McDaniel HARVESTON, Administratrix, and RLI Insurance Company, Surety, Appellees.
No. 2006-CA-01658-COA.
Court of Appeals of Mississippi.
October 16, 2007.
Rehearing Denied February 5, 2008.
John W. Christopher, attorney for appellants.
Ron A. Yarbrough, Jackson, Claude Pintard, Natchez, attorneys for appellees.
Before LEE, P.J., GRIFFIS and ISHEE, JJ.
GRIFFIS, J., for the Court.
¶ 1. The heirs of the decedent, Nathan McGee, brought suit against Margaret Harveston, in her capacity as administratrix *429 of the decedent's estate, and RLI Insurance Company ("RLI") as her surety. After trial, the chancellor found that there was no genuine issue of material fact and entered a judgment in favor of Harveston and RLI. The heirs now appeal and assert that the chancellor erred in finding that: (1) Harveston did not breach her fiduciary duty owed to them as beneficiaries of decedent's estate, and (2) that there was no failure to marshal the assets of the estate. We find no error and affirm.

FACTS
¶ 2. Nathan McGee died intestate in Adams County on September 23, 1999. For many years before his death, McGee was visually impaired, and he employed Harveston to read his mail and help him with other paperwork. He lived a reclusive lifestyle. According to Harveston, McGee only ever mentioned two relatives, an aunt and a cousin, both of whom he thought were dead.
¶ 3. On September 30, 1999, the chancery court appointed Harveston as the administratrix of McGee's estate. In her initial petition to become administratrix, Harveston estimated the estate to be valued at no more than $80,000, including some stocks or bonds of unknown value. After conducting an inventory of the estate, the total value of McGee's personal property equaled $2,254,199.84, including stocks valued at $2,191,906.09 that were held in brokerage accounts in New Orleans and Baton Rouge.
¶ 4. On December 22, 1999, the chancellor granted Harveston's petition to transfer the stocks held in New Orleans and Baton Rouge to Edward Jones Investments in Vidalia, Louisiana. Harveston wanted to consolidate the accounts because she was acquainted with a broker at Edward Jones, a place where she felt that the investment would be protected.
¶ 5. McGee's stock investments were held in five different companies. After his death, Harveston transferred those same stocks to Edward Jones and made no changes to the investment strategy. Harveston admitted that she had no knowledge of the stock market and had never invested any of her own money in the stock market. Instead, she relied on advice from the investment advisor at Edward Jones, the attorney and the accountant for the estate as to how to invest the estate's assets.
¶ 6. The first annual report, ending on October 31, 2000, indicated that the total value of the stock had increased even after a number of stocks were sold to pay federal and state taxes. The subsequent monthly reports from Edward Jones indicated various increases and decreases in stock value. The largest loss occurred after September 11, 2001. Further effects on the stock market, including the fraud scandals of Enron and WorldCom, prompted the estate's investment advisor at Edward Jones to recommend that the stocks be sold and reinvested in a more diversified manner.
¶ 7. On October 8, 2002, Harveston petitioned the court to sell the stocks and transfer the proceeds into more stable bonds and mutual funds. Throughout the entire time she served as administratrix, Harveston did not transfer or sell any stock without approval from the court.
¶ 8. Harveston worked diligently to find any living relatives of McGee. By August 23, 2003, the adjudication of heirship had concluded and the assets were later distributed to McGee's heirs at law.
¶ 9. On November 18, 2004, McGee's heirs then brought this action and alleged that Harveston had breached her fiduciary duty by investing estate assets in the stock market.
¶ 10. At trial, the heirs presented expert testimony that Harveston's investment *430 strategy had resulted in a loss of $145,802.66 in principal and the lost opportunity to receive $415,915.19 in interest available in more stable investment avenues, such as U.S. Treasury bonds, certificates of deposit or money market funds.
¶ 11. After trial, the court entered a judgment in favor of Harveston and her surety, RLI, finding that there was no evidence that Harveston breached her fiduciary duty. The court also found that Harveston acted diligently and under the advice of professionals hired by the estate when conducting matters required of her as administratrix. From this judgment, the heirs appeal.

STANDARD OF REVIEW
¶ 12. "A chancellor's findings of fact will not be disturbed unless manifestly wrong or clearly erroneous." Sanderson v. Sanderson, 824 So.2d 623, 625 (¶ 8) (Miss.2002). This Court will not disturb the findings of a chancellor when supported by substantial credible evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Id. at 625-26(¶ 8).
¶ 13. Furthermore, whether Harveston "exercised the requisite standard of care in regards to the management of the estate funds is a question of fact." McNeil v. Hester, 753 So.2d 1057, 1073(¶ 59) (Miss. 2000). Thus, this Court must affirm the chancellor's ruling that Harveston did not breach her fiduciary duty unless it is shown that the chancellor was manifestly wrong or clearly erroneous in his decision.

ANALYSIS
1. Was the chancellor manifestly wrong in finding that Harveston, as administratrix of the estate, did not breach her fiduciary duty of care?
¶ 14. The heirs argue that it was manifest error for the chancellor to find that Harveston did not breach the duty of care imposed on her as administratrix pursuant to Mississippi Code Annotated § 91-13-3 (Rev.2004). Specifically, they argue that Harveston's failure to immediately sell McGee's stock holdings and invest them in more stable securities, such as bonds or mutual funds, was a breach of her duty of care to exercise the judgment of a prudent person under the circumstances.
¶ 15. A fiduciary's duty of care requires that:
[i]n acquiring, investing, reinvesting, exchanging, retaining, selling, and managing property held in fiduciary capacity, the fiduciary shall exercise the judgment and care under the circumstances then prevailing which men of prudence, discretion, and intelligence exercise in the management of their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital.
Miss.Code Ann. § 91-13-3. The Mississippi Supreme Court further states that a fiduciary is "bound in the management of all the matters of the [estate] to act in good faith and employ such vigilance, sagacity, diligence and prudence as in general prudent [persons] of discretion and intelligence in like matters employ in their own affairs. . . ." Frazier v. Shackelford (In re Estate of Carter), 912 So.2d 138, 144(¶ 21) (Miss.2005).
¶ 16. At the close of the heirs' evidence, the chancellor concluded that there was no real dispute between the parties as to the facts of the case. Both parties agreed that the estate lost a considerable amount during Harveston's tenure as administratrix. Thus, the chancellor had to decide whether *431 the facts of the case proved that Harveston breached her duty of care.
¶ 17. Important to the chancellor's decision was the fact that Harveston did not choose to invest in the stock market. These certain stocks were purchased by McGee and held by him for many years before his death. Also, there was testimony that the stock value increased at certain points in time while held by the estate. The greatest losses suffered came after the terrorist attacks of September 11, 2001, at a time when even the heirs' investment expert was recommending that his clients "hold the course" and not sell their stock.
¶ 18. The chancellor held that there was no evidence presented to show that Harveston breached her fiduciary duty. Her only independent action related to the stock was to petition the court for approval to consolidate the stocks with one broker. She then relied on the advice of professionals hired by the estate and diligently followed their recommendations regarding the management of the stock.
¶ 19. Furthermore, administrators are not insurers or guarantors of the estate's assets. Harper v. Harper, 491 So.2d 189, 198 (Miss.1986). In Harper, the executrix relied on expert advice to determine the fair market value of a piece of real estate and sought court approval for the transfer of the asset. Id. at 199. The Mississippi Supreme Court held that she fulfilled her duty of care and was not liable for the subsequent loss to the estate. Id. In the same manner, Harveston relied on the advice of the investment advisor and also sought the court's approval for any sale or transfer of the stock. She fulfilled her fiduciary duty and is not required to insure the loss sustained by the estate.
¶ 20. The chancellor correctly decided that there was no legal basis to hold Harveston accountable to the beneficiaries for the losses which occurred due to unforeseen circumstances of the stock market. The heirs failed to prove that Harveston's administration of the estate caused the loss in stock value. Consequently, this issue has no merit.
2. Was the chancellor manifestly wrong in finding that Harveston did not fail to marshal the assets of the estate?
¶ 21. The heirs also claim that Harveston failed to marshal the assets of the estate within the state of Mississippi. They correctly state that "among a fiduciary's duties is that of marshaling the assets" of an estate. Jackson v. Jackson, 732 So.2d 916, 921 (¶ 6) (Miss.1999). Also, by statute, an executor may not remove property of the estate outside of the state of Mississippi. Miss.Code Ann. § 91-7-257 (Rev.2004). However, McGee's stock investments were never held within the state of Mississippi. During his life, and at the time of his death, McGee held the stocks in brokerage accounts in Baton Rouge, Louisiana and New Orleans, Louisiana. Then, pursuant to court order, Harveston transferred the stock to the Edward Jones account in Vidalia, Louisiana. Thus, the securities had always been held out of state and were never removed from Mississippi.
¶ 22. As the chancellor stated, the transfer "had no consequence or merit or effect on the account other than to place it into one account with one broker . . . who was a person that the administrator felt she could trust." Accordingly, this issue has no merit.
¶ 23. THE JUDGMENT OF THE ADAMS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
*432 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, AND ISHEE, ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.